Eula F. WARFIELD, Plaintiff,

v.

Dr. James A. ADAMS, Superintendent of the Board of School Commissioners of the City of Indianapolis, The Board of School Commissioners of the City of Indianapolis, and Richard W. Guthrie, Hazel Stewart, David W. Bowell, Mary E. Busch, Lillian M. Davis, Andre B. Lacy, and Paul E. Neal, as Members of the Board of School Commissioners of the City of Indianapolis, Defendants.

No. IP–83–294–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 5, 1984.

John D. Moss, Indianapolis, Ind., for plaintiff.

Susan Tabler, Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge [*].

This case was originally filed on March 3, 1983, and is presently before the court on cross-motions for summary judgment.[1] For reasons set forth below, summary judgment as to plaintiff's federal claims is granted in favor of the defendants, and the remaining state law pendent claims are dismissed without prejudice. To the extent not already done so, all depositions are ordered published.

### I.

The general underlying facts in this case are not in dispute. The plaintiff, a black female, was first employed by the Indianapolis Public School (IPS) system as an elementary school principal in 1969, after serving several years as a teacher and consultant with the IPS system. Except for a relatively short period of time during 1979–1980, when she requested and was granted a leave of absence, plaintiff remained in her capacity as an elementary school principal in the IPS system until August of 1982, when she was demoted to the position of first grade teacher.[2] The vacancy thereby created at plaintiff's school (number 74) was filled by transferring the principal from School Number 46, Roseanna Johnson, also a black female, to School Number 74. Mrs. Johnson's slot at School Number 46 was in turn filled by promoting Lizzie Strange, another black female, to the position of principal.

According to the depositions, affidavits, and exhibits proffered by the defendants (and essentially uncontroverted by the plaintiff[3]), defendant Adams, in his capacity as Superintendent of the IPS system, met with the plaintiff on July 13, 1982, to discuss with her his concerns over an unfavorable assessment of School Number 74 made earlier in the year by an IPS Area Coordinator, Betty Chisley. At this meeting were three other IPS officials, including Ms. Chisley.

On July 15, 1982, Superintendent Adams notified the plaintiff by telephone of his intention to reassign her to a teaching role. This conversation was confirmed by letter dated July 16, 1982, from Superintendent Adams to the plaintiff, in which defendant Adams notified the plaintiff of her right to meet with both the Superintendent and the IPS system's governing body. Plaintiff re-

---

[*] Sitting by designation, 28 U.S.C. § 292(b).

1. The defendants filed a series of motions to dismiss and/or for summary judgment as to one or more of the six counts set forth in plaintiff's complaint. Plaintiff in turn filed a motion for summary judgment on one of the numerous issues raised. At the pretrial conference held on February 15, 1984, this court ordered that all pending motions to dismiss be converted to motions for summary judgment, and ordered the parties to file any and all supplemental pleadings in support of or in opposition thereto by Friday, February 24, 1984. All parties agreed to that procedure and have complied therewith.

2. Plaintiff served briefly (January 7–28, 1980) as an elementary school teacher upon her return from sabbatical.

3. A careful examination of the pleadings compiled to date reveals that, in opposition to the numerous affidavits, depositions, and exhibits filed by the defendants in support of their motions for summary judgment, plaintiff has filed only a single affidavit. In this affidavit, plaintiff disputes little said by the defendants, complaining instead that, despite the several meetings mentioned, she was never informed by anyone of any of the charges against her. However incredible her statement may appear in light of the defendants' voluminous documentation, this court notes that questions of fact are not ordinarily subject to "trial by affidavit." See, generally, *Western Transp. Co. v. Wilson and Co., Inc.*, 682 F.2d 1227, 1232 (7th Cir.1982). Accordingly, this court expresses no opinion as to the truth of plaintiff's contention that she was at all times relevant hereto wholly ignorant of the reasons for her reassignment.

quested such a meeting by letter dated July 19, 1982.

On July 27, 1982, the plaintiff, accompanied by her husband, met with Superintendent Adams, Assistant Superintendent William G. Mahan, and Dr. Lorenza Dixon, an administrative assistant to Superintendent Adams. At the conclusion of this meeting, plaintiff asked that she be permitted to appear before the Board of School Commissioners of the Indianapolis Public Schools (Board).

Plaintiff's meeting with the Board, originally scheduled for August 3, 1982, was continued to August 16, 1982, per her own request. On August 16, 1982, the plaintiff appeared, represented by counsel. The day after this hearing, the Board adopted Superintendent Adams' recommendation that plaintiff's contract as principal not be renewed and that she be reassigned to a teaching position at another school. Plaintiff was so notified by letter dated August 18, 1982. This lawsuit resulted.

The gravamen of plaintiff's complaint is that (1) she was discriminatorily deprived of a property interest (her continued employment as a principal) without due process of law; and (2) the failure of the defendants to renew her annual contract as principal constituted a tortious breach of contract. More specifically, plaintiff set out her claims for relief in six counts on the following grounds:

Count I—Denial of procedural due process in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States;

Count II—Race discrimination in violation of 42 U.S.C. § 1981;

Count III—Race discrimination as a denial of equal protection under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983;

Count IV—Breach of contract;

Count V—Tortious interference with a contractual relationship; and

Count VI—Wrongful (tortious) termination of a contract.

Because it is the conclusion of this court that plaintiff has stated no cognizable federal claims which would vest this court with federal question jurisdiction under 28 U.S.C. § 1331 (and, concomitantly, under the civil rights portion, 28 U.S.C. § 1343), and there is an absence of any independent jurisdictional bases for the remaining state law claims, the putative federal claims advanced in the first three counts will be addressed first.

## II.

In essence, plaintiff raises two federal claims: (1) a denial of due process under the Fifth and Fourteenth Amendments to the Constitution of the United States (Count I); and (2) race discrimination under the Fifth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 (Counts II and III). Under the undisputed material facts in this case, neither of these claims satisfies the requisite legal elements of proof necessary to withstand summary judgment for defendants.

One uncontroverted material fact alone would appear to warrant summary judgment with respect to plaintiff's claims of denial of due process: the plaintiff's employment was not terminated. It is undisputed that plaintiff, who remains employed by IPS, was merely demoted from the position of principal to that of classroom teacher. Even plaintiff concedes that there are no disputed material facts with respect to the due process claim, i.e., plaintiff herself has moved for summary judgment on the due process claim.

The Supreme Court of the United States and the United States Court of Appeals for the Seventh Circuit have made clear that personnel actions of a magnitude less than termination do not rise to a level worthy of consideration under the due process provisions of the Constitution of the United States.[4] As the Supreme Court has

---

4. Although plaintiff alleges violations of the Fifth and Fourteenth Amendments to the Con-

stitution, it is evident that only the due-process provisions of the Fourteenth Amendment are

noted, "the federal court is not the appropriate forum in which to review a multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Consistent with this principle, the Seventh Circuit has adopted the position that where harm is financially measurable, absent discharge, a public employee has no "property interest" protected by the Fourteenth Amendment. *Brown v. Brienen,* 722 F.2d 360 (7th Cir.1983). Furthermore, absent discharge a public employee does not have a "liberty interest" protected by the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Morris v. City of Kokomo,* 178 Ind.App. 56, 62–63, 381 N.E.2d 510, 515–516 (1978).

▪ The Seventh Circuit's position in a case of this sort is expressly set forth in *Brown v. Brienen, supra.* In the *Brown* case, as in this case, the plaintiffs raised an arguable breach-of-contract claim which could have been litigated in state court. Because of the carefully reasoned language in *Brown,* the salient aspects of the Seventh Circuit's opinion are set forth at length below:

> ... This appeal thus raises acutely the question whether 42 U.S.C. § 1983 displaces the whole of the state law of public contracts into the federal courts through the characterization of a breach of such a contract as a deprivation of property without due process of law, even though most such disputes have nothing to do with civil rights as ordinarily understood.
>
> . . . . .
>
> ... [I]n the cases where breach of contract has been equated with deprivation of property, the employee was dis-

charged [citations omitted].... It seems, then, that there is no rule that every breach of a public employment contract is a deprivation of property within the meaning of the due process clause. In deciding whether a particular breach should be deemed a deprivation of property we must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts. Most common law wrongs are not actionable under Section 1983, though by definition they involve the deprivation of a legally protected interest. [citations omitted] Only interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests.

> Even so, *Roth* teaches that there is no deprivation of property under the Fourteenth Amendment when the employee has no interest protected by state law in his continued employment, and he would have no such interest if he were an employee-at-will. But an employee *fired* in breach of contract has been deprived of a legally protected interest that *Hostrop* [*v. Board of Junior College Dist. No. 515,* 471 F.2d 488 (7th Cir.1972)] and *Vail* hold to be property under the Fourteenth Amendment.

> *A breach of contract that does not terminate the employment relationship is different....* [T]he Constitution must not be trivialized by being dragged into every personnel dispute in state and local government.
>
> . . . . .
>
> He (plaintiff's counsel) can seek either remedy in state court, and until he has done so and been turned down it is doubtful whether his clients can be said to have suffered a deprivation, implying a finality which the mere postponement of a claimed benefit does not have. But

---

arguably implicated in this case. The Fifth Amendment applies only to the federal government, and IPS clearly is not an agency of the federal government. Under Ind.Code § 20–3–11–1 *et seq.,* IPS is an agency of the state government only. Moreover, plaintiff does not allege in her complaint, or otherwise, that IPS is a federal-governmental agency. Accordingly, all claims with respect to the Fifth Amendment are inapposite to the defendants in this case.

if deprivation there was, it inflicted a loss so tenuous ... that the contract law of the State of Illinois, administered fairly and reasonably as we must assume it will be, surely will give the plaintiffs all the process that is constitutionally due them. Even if the deprivation in this case had been of a more substantial form of property and had had greater finality, it would not follow that the plaintiffs were entitled to a pre-deprivation administrative hearing in addition to their common law judicial remedy.

. . . . .

To summarize, the "property" of which the plaintiffs were deprived, if property it is in a Fourteenth Amendment sense (which as we have said we doubt), is far down on the scale of Fourteenth Amendment interests.... Indeed, since the plaintiffs' loss was of a kind readily compensable in monetary terms, it may even be doubted whether any deprivation in the constitutional sense has yet occurred, or will occur unless and until the state courts turn down a meritorious contract claim.

. . . . .

In rejecting the plaintiffs' constitutional claims, we express no view of the merits of their contract claims, which they are free to pursue in state court.

722 F.2d 360–367 (emphasis added). The concurring opinion of Judge Flaum also acknowledges that claims of denial of constitutional due process are not cognizable when an adequate state-court remedy exists:

> ... A state court suit for breach of contract provides adequate protection of the appellants' interests. The relief provided by a state court suit might not be identical to that which appellants could receive under section 1983. However, state court relief is adequate for due process purposes if it fully compensates a plaintiff for his property loss. [citations omitted]

722 F.2d at 368. Thus, the import of *Brown v. Brienen*, the most recent pronouncement by the United States Court of Appeals for the Seventh Circuit on this subject, is that due process claims which are susceptible to remedy in a state-court action for breach of contract are not cognizable by the federal courts under the Constitution. *See also, Green v. Board of School Commissioners of the City of Indianapolis*, 716 F.2d 1191, 1192 ("Thus the only property right Green has because of his employment may be the right to sue in state court for breach of contract.") The further overriding import of *Brown* is that the Constitution will not support due process claims unless the deprivation has involved the complete termination of employment.[5] Parallelling the above is the trend

---

**5.** An examination of recent Seventh Circuit authority indicates a willingness to dispose of due-process cases on the basis of summary judgment, evidenced by the fact that the Seventh Circuit has affirmed summary judgment in seven of its eight most recent due-process cases. *See, Brown v. Brienen*, 722 F.2d 360 (7th Cir. 1983); *Green v. Board of School Commissioners*, 716 F.2d 1191 (7th Cir.1983); *Hadley v. County of DuPage*, 715 F.2d 1238 (7th Cir.1983); *Grimes v. Eastern Illinois University*, 710 F.2d 386 (7th Cir.1983); *Smith v. Board of Education*, 708 F.2d 258 (7th Cir.1983); *Lyznicki v. Board of Education*, 707 F.2d 949 (7th Cir.1983); and *Turnquist v. Elliott*, 706 F.2d 809 (7th Cir.1983). In the *Vail* case, which involved a *termination* of employment, the Seventh Circuit, 706 F.2d 1435, Judge Posner dissenting, affirmed the ruling of the district court to the effect that the plaintiff had a property interest in continued employment. That case is presently before the Supreme Court of the United States *sub nom.*

*Board of Education v. Vail*, cert. granted, —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983). Nonetheless, the Seventh Circuit has affirmed summary judgment for defendants in every other case, even those involving termination of employment (i.e., *Grimes; Hadley;* and *Green*). Moreover, in *every* case involving a personnel action which did not rise to the level of discharge, the Seventh Circuit has recognized the propriety of a summary-judgment ruling for defendants (e.e., *Turnquist; Lyznicki; Smith;* and *Brown*). Thus, in a case of this nature, it is evident that the law of the Seventh Circuit supports summary judgment for defendants here.

Counsel for plaintiff refers to this line of recent case authority from our Court of Appeals as representing a "predisposition". The difference between a judicial predisposition and precedent may be in the eye of the beholder. To this beholder this recent case authority represents clearly established binding precedent.

towards requiring an examination of state law to see if there exists an adequate state remedy for alleged deprivations of protected interests *prior* to a federal court's exercise of jurisdiction over claims otherwise arising under 42 U.S.C. § 1983. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), first enunciated the proposition that negligent deprivations of property interests by those acting under color of state law do not give rise to § 1983 claims where state law provides an adequate post-deprivation procedural remedy. This principle has been extended to the general position that, so long as intentional deprivations of liberty interests are not involved, and the distinction between substantive and procedural due process rights is not forgotten, claims otherwise cognizable under § 1983 ought first to be subjected to state law scrutiny.[6] See, e.g., this court's opinion in *Thurman v. Rose*, 575 F.Supp. 1488 (N.D.Ind.1983), and authorities cited therein.

Bearing the above carefully in mind, it should be noted that plaintiff in this case has not been discharged. Her sole claim to a protected property interest is an alleged contract as principal[7] which she contends has been breached. Assuming the existence of a valid principal's con-

tract under Indiana law, Ind.Code § 20–6.-1–4–17.2, plaintiff clearly has an available state court remedy for the breach thereof by suing these same defendants in state court under Indiana law. Plaintiff concedes as much by raising a pendent state claim in Count IV in her complaint. Thus, and even assuming the existence of a protected interest within the meaning of the Fourteenth Amendment, see *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the availability of an adequate state remedy precludes this court's addressing plaintiff's § 1983 and Fourteenth Amendment claims under the facts of this case.

### III.

In Counts II and III, plaintiff alleges race discrimination in violation of the Fifth[8] and Fourteenth Amendments, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. Under such provisions, the plaintiff bears a very heavy burden of proof: she must prove intentional or "purposeful" discrimination. *Washington v. Davis*, 426 U.S. 229, 238–239, 96 S.Ct. 2040, 2046–2047, 48 L.Ed.2d 597 (1976); *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835

---

**6.** This emergency rule is conceptually distinct from the general rule that claims clearly cognizable under 42 U.S.C. § 1983 need not be first presented to the state courts or administrative tribunals for purposes of exhaustion. *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (administrative remedies); *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (judicial remedies).

**7.** The existence of this putative contract right is somewhat confusing. It is uncontroverted that the plaintiff's position as principal, unlike that of her status as an apparently "tenured" teacher, is based solely on a contract which was annually renewable and could, therefore, be "terminated" by either party's refusal to agree to its renewal for an upcoming academic year. Thus, while a teacher who has been employed for a number of years under a "tenure" system supported by rules or "mutually explicit understandings" may be able to show a legitimate claim of entitlement to her job and thereby possess a property interest protected by the

Fourteenth Amendment, *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), mere longevity in employment does not create such a protected property interest. *Grimes v. Eastern Illinois University,* 710 F.2d 386, 387 (7th Cir.1983); *Smith v. Board of Education of Urbana School District No. 116 of Champaign County, Illinois,* 708 F.2d 258 (7th Cir.1983). Accord, see *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1099 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Indiana law has a statutorily created tenure system for teachers, but recognizes no such tenure rights in administrative positions. *New Castle-Henry Township School Corp. v. Hurst,* 145 Ind.App. 131, 138, 247 N.E.2d 835, 840 (1969); *State ex rel. Cleary v. Bd. of School Com'rs,* Ind.App., 438 N.E.2d 12, 13 n. 2 (1982).

**8.** For the reasons asserted in footnote 4 above, plaintiff's claims under the Fifth Amendment to the Constitution of the United States are without foundation.

(1982). Stated otherwise, plaintiff must show that "but for" her race, she would not have been demoted from the position of principal. *See, Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 33 E.P.D. ¶ 34,054, p. 31,949 (3d Cir.1983). It is not even sufficient for plaintiff to show that race was a "substantial" or "motivating" factor leading to the challenged action. See, e.g., *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Thus, the plaintiff must show that race was the "determinative factor" for the defendant's action. *Lewis v. University of Pittsburgh, supra*, at 917, p. 31,954.

The undisputed material facts relevant to the disposition of plaintiff's race-discrimination claims are the following:

1. Defendants determined to remove plaintiff from her principal position because of administrative incompetence. Defendants' assessment of administrative incompetence was based, in turn, on nondiscriminatory factors such as: parent complaints about plaintiff's administration; teacher complaints about plaintiff's administration, coupled with a widespread exodus of teachers from plaintiff's building; an incident in which a student was killed allegedly because of plaintiff's failure to establish procedures for the protection of students while disembarking from school buses; adverse publicity against IPS in the media as a result of plaintiff's alleged misconduct; the situation at plaintiff's school which resulted in the formation of a fact-finding committee and a school-improvement committee to deal with the problems of plaintiff's school.[9]

2. Plaintiff was replaced by a black female who, in turn, was also replaced by a black female.

3. The percentage of black elementary-school principals remained the same after the removal of plaintiff as before her removal, i.e., 39%.

4. Three of the seven Board members who voted to remove plaintiff from the position of principal were black.[10]

5. There is no evidence—in the depositions, affidavits, interrogatories or documents produced—that race was in any way involved in the decision to demote plaintiff.

■ On the face of this undisputed material evidence, plaintiff offers nothing material in rebuttal. In addition to the mere unsupported allegations of the complaint, the only "fact" advanced by plaintiff is that no other principal, white or black, has been removed from the position of principal after February 1. However, the Supreme Court of the United States has made clear that such a "fact" is not material in a case involving claims of constitutional discrimination: mere statistical evidence of adverse

---

9. Not only did plaintiff fail to respond adequately to the allegations of incompetence levelled by defendants' numerous affidavits, exhibits, and depositions, plaintiff sought to enjoin defendants from delving into the reasons for her demotion and reassignment before a jury by way of a motion in limine, filed on February 24, 1983. Rule 56(e) of the F.R.Civ.P. states explicitly, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judg-

ment, if appropriate, shall be entered against him.

While this court expresses no opinion as to the *adequacy* of the charges made, or to the sufficiency of the hearing(s), the record is largely uncontroverted on the score of defendants' allegations of administrative incompetence.

10. One (Stewart) of the three (Stewart, Busch, and Davis) School Board members who are black did not vote in favor of Superintendent Adams' recommendation that plaintiff be removed from the position of principal and reassigned as a classroom teacher. However, the reason for this black School Board member's vote was that she believed, based on the egregiousness of plaintiff's misconduct, that plaintiff should be discharged instead of demoted.

impact is not sufficient to satisfy a plaintiff's burden under the Constitution. *Washington v. Davis*, 426 U.S. 229, 238–239, 96 S.Ct. 2040, 2046–2047, 48 L.Ed.2d 597 (1976).

 The Federal Rules of Civil Procedure and the case law make clear that, in order to withstand summary judgment, plaintiff must affirmatively produce evidence sufficient to demonstrate the existence of an issue material to her burden of proving intentional discrimination. The case law generally supports this principle in the context of discrimination cases. *See,* e.g., *International Woodworkers of America, AFL–CIO, Local 5–346 v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1271 (4th Cir.1981); *Stovall v. City of St. Louis Board of Education*, 469 F.Supp. 551, 552 (E.D.Mo.1979). The Seventh Circuit has also expressly recognized this principle:

> Mere conclusory assertions of discrimination are not sufficient to withstand a motion for summary judgment....
>
> When the moving party has clearly established certain facts which defeat the opposing party's claim, the circumstances of the case may cast upon the opposing party a duty to go forward with controverting facts. Otherwise, the movant will have sustained its burden of proof and will be entitled to summary judgment.

*Patterson v. General Motors Corp.*, 631 F.2d 476, 482–483 (7th Cir.1980).

 Because the plaintiff has submitted no evidence indicating that defendants acted with an intent to discriminate on the basis of race, plaintiff's discrimination claims are without substantiation. *See,* e.g., *Huhn v. Koehring Co.*, 718 F.2d 239, 245 (7th Cir.1983) (age discrimination); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1218 (7th Cir.1980) (same) ("Here plaintiff had no indications of motive and intent, supportive of his position, to put on the scales for weighing. It was a wholly empty case.") In such a circumstance, summary judgment is clearly appropriate.[11]

### IV.

Plaintiff's complaint raises three pendent state-law claims, two sounding in tort (Counts V and VI) and one sounding in contract (Count IV). As noted above, there is no justiciable federal-law claim to support such pendent state-law claims. It therefore follows that it is appropriate for this court to dismiss the state-law claims for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Ordinarily when the federal claims are dismissed before trial, any pendent state-law claim is dismissed for lack of jurisdiction."); *Lyznicki v. Board of Education*, 707 F.2d 949, 953 (7th Cir.1983).

 Although defendants argue strenuously for the dismissal with prejudice of plaintiff's two tort claims (Counts V

11. A wealth of case law supports summary judgment for defendants in discrimination cases—even discrimination cases under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act, both of which impose a lesser standard of proof on a plaintiff. *See,* e.g., *Huhn v. Koehring Co.*, 718 F.2d 239 (7th Cir.1983); *Mason v. Continental Illinois National Bank*, 704 F.2d 361 (7th Cir. 1983); *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir.1980); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir.1980); *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864 (9th Cir.1982); *Talev v. Reinhardt*, 662 F.2d 888 (D.C.Cir.1981); *International Woodworkers of America, AFL–CIO, Local 5–346 v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir.1981); *McClain v. Mack Trucks, Inc.*, 532 F.Supp. 486 (E.D.Pa.1982), *aff'd*, 707 F.2d 1393 (1983); *Stovall v. City of St. Louis Board of Education*, 469 F.Supp. 551 (E.D.Mo.1979); *Corbin v. Pan American World Airways, Inc.*, 432 F.Supp. 939 (N.D. Cal.1977); *Lim v. Citizens Savings & Loan Association*, 430 F.Supp. 802 (N.D.Cal.1976). In addition, a recent unpublished decision by Chief Judge Dillin of the Southern District of Indiana supports the granting of summary judgment on race-discrimination claims under Title VII, as well as § 1981 and § 1983, in circumstances similar to this case. *Poindexter v. Board of School Commissioners of the City of Indianapolis*, Cause No. IP 83–620–C (S.D.Ind. January 19, 1984), slip op. at 5–7.

and VI),[12] this court is disinclined to do so, preferring instead to adopt the course of dismissal without prejudice taken as to the contract claim (Count IV), *infra.*

 In Count IV, plaintiff alleges that the defendants breached her employment contract with IPS. As already noted, the only basis plaintiff advances for the existence of such an employment contract is a provision of the Teacher Contract Act, Ind.Code § 20–6.1–4–17.2. Plaintiff does not allege that she actually had any written, signed contract for the position of principal for the year 1982–1983 school year. Thus, whether plaintiff actually had a contract, and whether said contract was in fact breached requires a construction of the Indiana statute.

The basic principles favoring dismissal of pendent state claims in the wake of dismissal of federal claims support dismissal in the instant case. As the Supreme Court of the United States stated in *United Mine Workers of America v. Gibbs, supra:*

It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants. . . . Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claim should be dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139. In this case, the following factors support dismissal of plaintiff's breach-of-contract claim:

1. There is no diversity between the parties in this action, i.e., no independent basis of jurisdiction.

2. Plaintiff's contract rights require a construction of Ind.Code § 20–6.1–4–17.2 which has not heretofore been interpreted by the Indiana courts and, therefore, constitutes an issue of first impression under state law.

In light of these factors, the considerations of comity in our federal system, as well as judicial economy, convenience and fairness to litigants, dictate that the Indiana state courts be given the first opportunity to consider plaintiff's breach-of-contract claims. This proposition is supported by the *Brown v. Brienen* case, *supra,* and the

**12.** Where federal claims are dismissed before trial, the district court may, in its discretion dismiss with prejudice any state law claims appended to the federal claims. *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 307 (7th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

The Indiana Tort Claims Act, Ind.Code § 34–4–16.5–1 *et seq.,* requires as a prerequisite to the institution of a tort-claim lawsuit against a school corporation, its board members, and its employees that a notice be filed within 180 days of the occurrence of the loss:

Except as provided in [§ 34–4–16.5–8, dealing with incompetent claimants] a claim against a political subdivision is *barred* unless notice is filed with the governing body of that political subdivision within 180 days after the loss occurs.

Ind.Code § 34–4–16.5–7 (emphasis added). The failure to file a timely notice satisfying the requirements of the Indiana Tort Claims Act constitutes a jurisdictional bar to any tort action against entities and persons such as defendants herein. *Teaque v. Boone,* Ind.App., 442 N.E.2d 1119, 1120 (1980); *Coghill v. Badger,* Ind.App., 418 N.E.2d 1201, 1207 (1981). This is true regardless of whether the political subdivision otherwise had knowledge of the incident giving rise to the asserted tort claim. *Teague v. Boone, supra; Hedges v. Rawley,* Ind.App., 419 N.E.2d 224, 226–227 (1981). *See also* D. Harrigan, "1981 Survey of Recent Developments in Indiana Law: Torts," 15 Ind.L.Rev. 425, 441 (1982).

The operative undisputed facts with respect to plaintiff's tort claims are the following:

1. The incident giving rise to plaintiff's loss occurred on August 17, 1982, when the School Board voted not to reappoint plaintiff as a principal for the year 1982–1983 school year. Plaintiff was advised of the Board's decision on August 18, 1982 by letter and, therefore, was aware as of that date that the alleged loss had occurred.

2. One hundred and eighty (180) days thereafter—or by February 14, 1983—defendants had not received any notice complying with the terms of the Indiana Tort Claims Act.

3. Plaintiff filed this action on March 3, 1983.

4. Plaintiff's complaint is devoid of any allegation indicating compliance with the Indiana Tort Claims Act.

Defendants argue that plaintiff's alleged failure to comply with the jurisdictional prerequisites of the Indiana Tort Claims Act as to Counts V and VI renders the complaint defective on its face.

*Green v. Board of School Commissioners* case, *supra,* in which the Seventh Circuit recognized that a public employee's sole recourse is to the state courts for determination of contract claims. In fact, as noted in these cases, such state-court proceedings are the due process to which such an employee is entitled. Furthermore, in a recent decision, the Supreme Court of the United States has recognized the propriety of state-court rulings on claims akin to those presented here. In *Migra v. Warren City School District Board of Education,* — U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Court held that a plaintiff is precluded from raising in a subsequent federal court action under § 1983 any claim, whether raised or not in a prior state-court proceeding, which would be precluded by state law. A corollary to the *Migra* decision is that it is reasonable for federal courts, in the interest of judicial economy, to defer to state courts under some circumstances.

## V.

For the above stated reasons, it is now the ORDER of this court that defendants' motions for summary judgment be GRANTED in favor of the defendants, and against the plaintiff, on the federal claims raised (Counts I, II, and III of her complaint); and, further that the remaining pendent state-law claims (Counts IV, V, and VI of her complaint) be dismissed without prejudice. Each side to bear own costs. SO ORDERED.