Geraldine **MOODY**

v.

**JEFFERSON PARISH SCHOOL BOARD, et al.**

Civ. A. No. 86–3822.

United States District Court, E.D. Louisiana.

Oct. 5, 1992.

Ronald L. Wilson, New Orleans, La., for plaintiff.

Jack A. Grant, Olden C. Toups, Jr., Grant & Barrow, Gretna, La., for defendants.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

Jefferson Parish School Board and other defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted, and in the alternative, have filed a motion for summary judgment. Plaintiff Geraldine Moody ("plaintiff") filed an opposition to both motions. In a subsequent motion, plaintiff notified the Court that she wishes to dismiss with prejudice all claims against defendants Laura Quave and Elizabeth Potts.

### A. Procedural and Factual Background

The events giving rise to this suit began eight years ago when plaintiff, an African-American teacher at West Jefferson High School, was granted sabbatical leave for the 1984–1985 school year due to medical problems. Plaintiff had taught at West Jefferson since 1968 and had served as chairperson of the Social Studies Department during the 1983–1984 academic year. The other teachers in the department elected plaintiff as chairperson, and the school principal, Eldon Orgeron, Jr., ratified the election. Before plaintiff took leave, she recommended that Charles Paine replace her as chairperson. Paine served as chairperson for the 1984–1985 school year. When plaintiff returned to West Jefferson at the beginning of the 1985–1986 academic year, she learned that Paine had been elected chairperson for that year by the other teachers in the department. The principal ratified the election.

During the 1985–1986 school year, plaintiff taught the honors section of American History. The students studied the First Amendment to the United States Constitution in one segment of the course. One group of students decided to publish a newspaper, "Your Side," in an effort to learn more about the First Amendment's guarantee of freedom of the press. Plaintiff approved the project. The students created the newspaper for academic credit; the newspaper was unrelated to the existing school newspaper sanctioned by West Jefferson High School through its journalism department. Eventually, the students sold "Your Side" throughout the school.

"Your Side" proclaimed as its purpose bringing the news to students and revealing the hidden truths at West Jefferson. Furthermore, the newspaper stated that all student opinions and comments were welcome. Some of the teachers and the principal found the contents of the paper to be inappropriate for high school students. One column in the paper entitled "Dear Spooky" advocated cheating on a math test. Another entry in that column advised a bored student to drop out of school. Finally, the horoscope section mentioned "erotic sexual dreams" and "cheating on your lover." The section also advised taking birth control pills and snorting cocaine.

Upon reading the newspaper, Orgeron confiscated all remaining copies and told the students not to publish another edition. Orgeron wrote a letter to plaintiff on March 21, 1986 ordering her to cease publication and distribution of the newspaper. On the same day, Orgeron submitted to plaintiff a list of questions about "Your Side." Orgeron and plaintiff conferred on March 24 and 25, and Orgeron asked plaintiff for a financial report on "Your Side." Plaintiff then submitted her responses to the list of questions. Orgeron felt that plaintiff's answers were inadequate and he then requested a conference with support personnel from the Jefferson Parish School Board. Virginia Ziegler, Personnel Evaluation Coordinator for the Jefferson Parish School Board, conducted the requested conference on April 14. Both plaintiff and Orgeron attended. Orgeron again asked the plaintiff to a produce the financial ı port for "Your Side." By May 16, plaintiff had not produced a financial report, and Orgeron asked that she do so by May 20. On May 20, Orgeron wrote a letter to Sidney Montet, then Director of Personnel for the Jefferson Parish School Board, requesting that a formal letter of reprimand be placed in plaintiff's personnel folder, and that plaintiff be transferred to another school. The letter cited faculty unrest and confrontations, inadequate supervision of a student project, inadequate assessment of a student project, and violation of school policy related to sales on school property as reasons for the requested reprimand and transfer. After reviewing the supporting documents, Montet acted on the recommendations of Orgeron by placing a letter of reprimand in plaintiff's personnel file and by transferring plaintiff from West Jefferson High School to Stella Worley Middle School. Montet notified plaintiff of his decision in a letter dated June 9, 1986. Plaintiff then resigned and never reported to the middle school for the 1986–1987 academic year.

Plaintiff filed this suit on September 4, 1986, and named the following as defendants: Jefferson Parish School Board; Dewey R. Spies, individually and in his capacity as President of the Jefferson Parish School Board and Representative of District 9; Robert Autin, individually and in his capacity as Vice–President of the Jefferson Parish School Board and Representative of District 3; Robert Wolfe, Steve J. Theriot, Henry B. Hoppe, Jr., Martin B. Marino, Elton M. Lagasse, and Nick Giambelluca, individually and in their capacities as representatives of districts 1, 2, 4, 5, 6, 7, and 8, respectively; Anthony P. Chimento, individually and in his capacity as Superintendent of the Jefferson Parish School Board; Eldon Orgeron, Jr., individually and in his capacity as Principal of West Jefferson High School; Shirley Elliott, individually and in her capacity as Assistant Principal of West Jefferson High School; Virginia Ziegler, individually and in her capacity as Personnel Evaluation Coordinator for the Jefferson Parish School Board;

Elizabeth Potts and Laura Quave, individually and in their capacities as teachers at West Jefferson High School; John Doe, individually and in their capacities as teachers at West Jefferson High School; and, XYZ Insurance Company.

### B. Analysis

The Court first addresses plaintiff's motion to voluntarily dismiss with prejudice all claims against defendants Laura Quave and Elizabeth Potts. The complaint against these two defendants was DISMISSED with prejudice on an earlier date. This Court now turns to the claims against the remaining defendants.

#### 1. *LSA–R.S. 23:1006*

Plaintiff alleges that defendants intentionally discriminated against her in violation of LSA–R.S. 23:1006 ("23:1006") by refusing to reinstate her as chairperson of the Social Studies Department because of her race. The complaint does not make clear which defendants have allegedly violated plaintiff's rights under this statute, and therefore, the Court addresses the claim with regard to all named defendants.

■ Defendants argue first that this Court should dismiss the claim pursuant to Fed.R.Civ.P. 12(b)(6) because plaintiff has failed to state a claim upon which relief can be granted. "At this stage of the litigation, we must accept [plaintiff's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Accepting plaintiff's allegations as true, no relief could be granted under 23:1006 with regard to defendants Orgeron, Elliott, Ziegler, and John Doe. Section 23:1006 prohibits discrimination by an employer, and defines employer as "a person, association, legal or commercial entity, labor union, employment agency, the state, its agencies, boards, commissions, or political subdivisions receiving services from an individual and in return giving compensation...." Defendants Orgeron, Elliott,

Ziegler, and John Doe do not fall under the definition of employer. Plaintiff's employer was the Jefferson Parish School Board, the party with whom the Jefferson Federation of Teachers had its employment contract. Because plaintiff could not prevail against these defendants under any reading of the facts here, the claim is DISMISSED as to defendants Orgeron, Elliott, Ziegler, and John Doe.

Defendants Spies, Autin, Wolfe, Theriot, Hoppe, Marino, Lagasse, Giambelluca, and Chimento were not plaintiff's employers in their individual capacities. Therefore, the claim is DISMISSED as to these defendants in their individual capacities.

The Jefferson Parish School Board and Spies, Autin, Wolfe, Theriot, Hoppe, Marino, Lagasse, Giambelluca, and Chimento, each in their representative capacities, collectively functioned as plaintiff's employer. For this reason, and because plaintiff has alleged that she was the victim of intentional discrimination, the motion to dismiss is DENIED with regard to the school board and its members in their representative capacities.

■ Defendants have moved in the alternative for summary judgment. This Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Defendants have offered several affidavits and one deposition transcript in support of their position. Specifically, the affidavits of Charles Paine, Yolanda Bondi, and Eldon Orgeron, together with plaintiff's deposition transcript, show that neither the Jefferson Parish School Board nor any of its members participated in removing plaintiff from the position of chairperson of the Social Studies Department. The plaintiff now "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff has failed to meet this bur-

den. Plaintiff has neither denied the information in the above mentioned documents nor offered any evidence to the contrary. In fact, plaintiff states in her opposition memorandum that she "does not intend to contest defendants' contention respective to her non-reinstatement as the Chairperson of the Social Studies Department." Consequently, the motion for summary judgment by the Jefferson Parish School Board and its members on the issue of 23:1006 is GRANTED.

### 2. 42 U.S.C. § 1981

 This section provides in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff contends that all defendants violated her rights under § 1981 by refusing to reinstate her as chairperson of the Social Studies Department, and by largely excluding African–Americans from the position of chairperson. Defendants claim that plaintiff has failed to state a claim under Fed. R.Civ.P. 12(b)(6). This Court now recharacterizes defendants' motion to dismiss as a motion for summary judgment for the reasons below.

In *Young v. Biggers*, 917 F.2d 873 (5th Cir.1990), a § 1983 action, the court upheld the district court's decision to recharacterize a motion to dismiss as a motion for summary judgment. "The district court considered an affidavit offered by two defendants in their motion to dismiss or for summary judgment, and other matters outside the pleadings with regard to the issue of immunity." *Id.* at 876. In order to test the merits of plaintiff's complaint in this case, the Court must look beyond the complaint to the affidavits and other evidence presented by the defendants.

The only way to test the merit of a claim if matters outside the bounds of the complaint must be considered is by way of motion for summary judgment. In that event, even if a motion to dismiss has been filed, the court must convert it into a summary judgment procedure and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Fed. R.Civ.P. 56.

*Id.* at 876–77 (quoting *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980)). Accordingly, the Court treats defendants' motion to dismiss as a motion for summary judgment.

Defendants have moved for summary judgment on the issue of § 1981 discrimination. In *Castaneda v. Pickard*, 648 F.2d 989 (5th Cir. Unit A June 1981), a group of Mexican–American children and their parents sued a Texas school district for violations of § 1981 and other statutes. The court set forth the burden of proof that § 1981 plaintiffs must carry:

[I]t is now well-established that in order to assert a claim based upon unconstitutional racial discrimination a party must not only allege and prove that the challenged conduct had a differential or disparate impact upon persons of different races, but also assert and prove that the governmental actor, in adopting or employing the challenged action, **intended** to treat similarly situated persons differently on the basis of race.

*Id.* at 1000. *See also Waste Systems, Inc. v. Clean Land Air Water Corp.*, 683 F.2d 927 (5th Cir.1982); *Vasquez v. McAllen Bag & Supply Co.*, 660 F.2d 686 (5th Cir. 1981). The court in *Warfield v. Adams*, 582 F.Supp. 111 (S.D.Ind.1984), applied the above standard to facts similar to those in this case. In *Warfield*, an African–American woman alleged racial discrimination pursuant to § 1981, among other statutes, after the local school board demoted her from elementary school principal to teacher. The court entered summary judgment against the woman because she failed to "affirmatively produce evidence sufficient to demonstrate the existence of an issue

material to her burden of proving intentional discrimination." *Id.* at 119.

In this case, plaintiff has failed to produce any evidence that a material issue exists with regard to intentional discrimination. In fact, plaintiff, in her own deposition, made statements which demonstrate that her claim stems only from her personal belief that defendants Orgeron and other teachers discriminated against her:

Q: They elected Charlie Paine, and, therefore, Mr. Orgeron discriminated against you?

A: Yes. I think so.

The only "fact" that plaintiff offers in support of her position is her conclusion that she was not re-elected as department chairperson because of an unwritten policy that African–Americans are excluded from that position. Plaintiff offers no documents or evidence supporting her allegation of intentional discrimination. "Because the plaintiff has submitted no evidence indicating that defendants acted with an intent to discriminate on the basis of race, plaintiff's discrimination claims are without substantiation.... In such a circumstance, summary judgment is clearly appropriate." 582 F.Supp. at 119. Plaintiff in this case has failed to set forth any specific facts with regard to intentional discrimination showing that a genuine issue for trial exists. Therefore, defendants' motion for summary judgment on the issue of § 1981 liability is GRANTED.

### 3. *42 U.S.C. § 1983*

■ This section provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff alleges that defendants Orgeron, Elliott, Ziegler, and John Doe have violated § 1983 by depriving her of her First Amendment right to academic freedom, by retaliating against her for exercising that right, and by harassing her for exercising that right. For the reasons set forth above in the § 1981 discussion, the Court treats defendants' motion to dismiss the § 1983 claim as a motion for summary judgment.

The language of § 1983 indicates that a plaintiff can maintain a suit under that section only if he or she has been deprived of exercising a constitutional right. First, this Court questions whether plaintiff has standing to assert a claim that her constitutional rights have been violated. A litigant can assert a claim if he or she is the proper proponent of the asserted legal rights. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In *Romano v. Harrington*, 664 F.Supp. 675 (E.D.N.Y.1987), the court found that the plaintiff teacher did not have "first party" standing to assert a claim that his First Amendment rights had been violated. The teacher had been dismissed from his position as faculty advisor to a high school newspaper after the newspaper published a student article opposing the proposed federal holiday honoring Martin Luther King, Jr. The court held that the teacher's "role as faculty advisor [was] not independently protected by the Constitution...." *Id.* at 681. This Court similarly finds that plaintiff's role in supervising the publication of "Your Side" is not independently protected by the Constitution. Plaintiff neither wrote nor edited any part of "Your Side." Her deposition indicates that she only critiqued the students' work.

Furthermore, this Court finds that plaintiff has not met the requirements for third party standing, i.e. for asserting a claim on behalf of her students. While plaintiff's students wrote "Your Side," and therefore their First Amendment rights might be an issue, "[o]rdinarily one may not claim standing in [court] to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). While the Court in *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), recognized some exceptions to this general rule,

those exceptions do not apply to this case. First, plaintiff's complaint in this case fails to mention the rights of students; plaintiff seeks only to vindicate her own rights. Second, plaintiff's students had the ability to assert their own rights. The *Romano* court found that the students' ability to assert their own rights was diminished partly because the principal took action only against the teacher and not the students. In this case, the principal took action against the students by ordering them not to sell any more copies of "Your Side" and then by confiscating all remaining copies. More importantly, the evidence indicates that the students then consulted an attorney. This Court therefore finds that the students could have asserted their own constitutional rights at least as effectively as plaintiff could have asserted them. Considering the above two reasons, plaintiff has no third party standing.

Since plaintiff has no independent standing, nor any third party standing, to assert a claim based on alleged violations of the First Amendment, no genuine issue for trial exists with regard to § 1983. Accordingly, defendants' motion for summary judgment is GRANTED on the § 1983 issue.

Even if plaintiff had independent standing to assert a First Amendment claim, this Court would still enter summary judgment in favor of defendants.

First, this Court might not be the appropriate forum for adjudicating plaintiff's § 1983 claim. In *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121 (5th Cir.1991), a math professor sued Louisiana Tech University officials for allegedly retaliating against him after he challenged several decisions made by the math department and after he publicly supported another professor who had been criticized by the administration. In affirming a grant of summary judgment in favor of the university, the court questioned whether the suit was appropriate for federal court in the first place:

> Dorsett has not been fired or even threatened with termination.... The continuing retaliatory actions alleged by Dorsett appear to be nothing more than decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures. We recognize that such decisions might seem extremely significant to Dorsett, who has devoted his life to teaching. But we believe, nevertheless, that the alleged harms suffered by Dorsett do not rise to the level of a constitutional deprivation.
>
> In public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms.

*Id.* at 123.

As in the *Dorsett* case, plaintiff herein was disciplined after engaging in some sort of expression. Furthermore, plaintiff was not fired, but was transferred to another school after the West Jefferson administration and the local school board agreed that she did not adequately fulfill her duty to supervise the publication of "Your Side." Even though plaintiff's transfer was extremely significant to her, this Court feels that, under *Dorsett*, it might not be the appropriate forum for plaintiff to adjudicate her § 1983 claim.

■ Second, even assuming that federal court is the appropriate forum, this Court finds that the activity which prompted plaintiff's job transfer was not constitutionally protected. Defendants could have violated plaintiff's First Amendment rights only if plaintiff engaged in constitutionally protected activity. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Whether the plaintiff engaged in such activity is a question of law to be determined by the district court. *See Dorsett*, 940 F.2d at 124.

The question of whether a public employee's speech is constitutionally protected turns upon the "public" or "private" nature of the speech. *Connick v. Myers*, 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1690–91, 75

L.Ed.2d 708 (1983). The Court made the distinction as follows:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 147, 103 S.Ct. at 1690.

The Fifth Circuit has noted that a teacher's expression rises to the level of constitutionally protected "public concern" speech "if the words or conduct are conveyed by the teacher in his role as a citizen and not in his role as an employee of the school district." *Kirkland v. Northside Independent School Dist.,* 890 F.2d 794 (5th Cir.1989). In *Kirkland,* the school district refused to renew a high school history teacher's employment contract because he used a nonapproved reading list in class, he inadequately supervised his class, and he received substandard teaching evaluations. The Fifth Circuit found that the teacher's own supplemental reading list was not a matter of "public concern," and that his conduct in disregarding the proper procedure for reading list approval was not protected speech. *Id.* at 800. The court's rationale was that the teacher was not speaking as a citizen when he offered his supplemental list, that he never publicly announced that the school-supplied list violated his free speech rights, and that he never provided the school district an opportunity to review his reading list. Furthermore, the teacher never expressed any concerns about censorship until the district decided not to renew his contract. The court determined that he was trying "to cloak his substandard job performance in first amendment protection." *Id.*

The facts in *Kirkland* are similar to the facts in this case, and therefore this Court finds that *Kirkland* controls. When plaintiff authorized the publication of "Your Side" as a class project, she did so as an employee of the school district, not as a private citizen. The undisputed evidence submitted by defendants indicates that plaintiff never sought the school administration's approval of the class project, nor did she afford any of her superiors the opportunity to review the project before she approved it. More importantly, plaintiff indicated in her deposition that she knew the administration would have difficulty with the content of the paper, and yet she expressed concerns about censorship not to the administration or to the public, but only to the students who completed the project. Given these facts, and the court's rationale in *Kirkland,* this Court finds that the newspaper project was not a matter of "public concern," and that plaintiff's conduct in overseeing the assignment was not protected speech. Since plaintiff's speech failed to address a matter of public concern, this Court need not consider whether plaintiff established the two other essential elements of her claim: (1) that her interest in free speech outweighed the state's interest in efficient public services, and (2) that the protected speech was a motivating factor in the adverse employment decision. *See Id.; Rankin v. McPherson,* 483 U.S. 378, 393–94, 107 S.Ct. 2891, 2902, 97 L.Ed.2d 315 (1987); *Connick,* 461 U.S. at 146–48, 103 S.Ct. at 1690–91. Accordingly, this Court would grant summary judgment in favor of defendants even if plaintiff had standing to maintain a First Amendment cause of action.

In their motion for summary judgment, defendants spend much time arguing that the transfer of plaintiff to another school did not deprive her of any property interest protected by the Constitution. The basis for any such interest would be the Due Process Clause of the Fourteenth Amendment to the United States Constitution. However, plaintiff's complaint did not allege a violation of a property interest. This Court, therefore, declines to address that issue.

### 4. *42 U.S.C. § 1985*

While plaintiff's complaint does not specify which part of § 1985 defendants allegedly violated, this Court examines the

pertinent language in § 1985(3), the only applicable provision:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiff alleges that defendants Orgeron, Elliott, Ziegler, and John Doe conspired to violate her rights, and therefore violated § 1985. This Court could grant relief to plaintiff only if Orgeron, Elliott, Ziegler, and John Doe meet the definition of conspiracy under § 1985. "To sustain a cause of action under 42 U.S.C. § 1985(3), a plaintiff must prove the existence of a conspiracy among 'two or more persons'." *Hull v. Cuyahoga Valley Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir.1991).

In *Chambliss v. Foote*, 421 F.Supp. 12 (E.D.La.1976), *aff'd*, 562 F.2d 1015 (5th Cir. 1977), a female teacher at the University of New Orleans sued the university and its officials under § 1985(3), claiming that they conspired to interfere with her civil rights. The court held that the university and its officials constituted a single entity that could not conspire with itself. *Id.* at 15. While the present case involves high school, and not college, *Chambliss* is instructive. Plaintiff in this case claims that the Personnel Evaluation Coordinator for the Jefferson Parish School Board, the Principal of West Jefferson High School, the Vice–Principal of the school, and various teachers conspired to interfere with her constitutional rights. Because those individuals are all employed by the Jefferson Parish School Board, this Court finds as a matter of law that they constitute a single entity incapable of forming the alleged conspiracy.

Other courts have provided persuasive authority for such a finding. In *Hull*, the plaintiff alleged a § 1985(3) conspiracy among a school district superintendent, the executive director of the district, and a school administrator. The court found that since each of these three individuals was an employee or an agent of the local school board, they were members of the same collective entity and therefore incapable of forming a conspiracy. 926 F.2d at 510. In *Cromley v. Bd. of Educ. of Lockport*, 699 F.Supp. 1283 (N.D.Ill.1988), the court dismissed the plaintiff's § 1985(3) claim that the local school board, the school superintendent, and a high school principal conspired to interfere with her civil rights. The court found no such conspiracy because the defendants derived their ability to hurt the plaintiff solely from their positions within the same school district. Finally, the court in *Hankins v. Dallas Independent School Dist.*, 698 F.Supp. 1323, 1330 (N.D.Tex.1988), found that a high school and its officials constituted a single entity, and therefore could not form a conspiracy under § 1985.

Considering the above law, and the facts of this case, this Court finds that it could not grant relief to plaintiff under § 1985 on any reading of the facts. Accordingly, defendants' motion to dismiss the § 1985 claim is GRANTED.

### 5. *Intentional or Reckless Infliction of Emotional Distress*

■ Plaintiff alleges that defendants intentionally or recklessly caused her emotional distress through extreme and outrageous conduct. The complaint states a claim upon which relief can be granted and therefore defendants' motion to dismiss is DENIED.

Defendants have moved for summary judgment in the alternative. In order to recover for intentional infliction of emotional distress under Louisiana law, "a plaintiff must prove by a preponderance of the evi-

dence that the defendant, by extreme and outrageous conduct, caused emotional distress either intentionally or with the realization to a virtual certainty that mental anguish will occur." *Thomas v. Frederick,* 766 F.Supp. 540, 558 (W.D.La.1991). Louisiana state courts have followed this definition almost word for word. *See White v. Monsanto Co.,* 570 So.2d 221 (La.App. 5 Cir.1990); *Boudoin v. Bradley,* 549 So.2d 1265 (La.App. 3 Cir.1989). The *Boudoin* court defined outrageous conduct as "conduct 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'." 549 So.2d at 1267 (citation omitted).

The collective evidence in the present case shows that no genuine issue of fact exists with regard to intentional infliction of emotional distress. The affidavits, deposition transcripts, and other documents supplied by defendants show that plaintiff was transferred because her superiors believed she had not performed her job adequately. Furthermore, plaintiff was transferred with equal pay. While plaintiff obviously suffered a loss of esteem as a result, no evidence exists that defendants engaged in conduct beyond the bounds of all decency in a civilized community. Teachers in many communities across the country are transferred or dismissed because their supervisors feel that their performance is substandard. While defendants in this case probably knew that their decision would adversely affect plaintiff, plaintiff has not set forth any specific facts in this case showing that defendants' conduct was extreme and outrageous. Therefore, defendants' motion for summary judgment on the issue of intentional infliction of emotional distress is GRANTED.

Accordingly,

IT IS ORDERED that defendants' motion to dismiss the LSA–R.S. 23:1006 claim is GRANTED with regard to defendants Orgeron, Elliott, Ziegler, and John Doe. The defendants' motion for summary judgment on the LSA–R.S. 23:1006 claim is GRANTED with regard to all other defendants.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on the claims under 42 U.S.C. §§ 1981, 1983 and on the claim of intentional infliction of emotional distress is GRANTED.

IT IS FURTHER ORDERED that defendants' motion to dismiss the claim under 42 U.S.C. § 1985 is GRANTED.