**Vivian M. RODE, and Jay C. Hileman, Plaintiffs,**

v.

**Nicholas G. DELLARCIPRETE, John Harhigh, Josephine Fure, Ruth Brown, Robert Kinch, Jay Cochran, Jr., Pennsylvania State Police, and Commonwealth of Pennsylvania, Defendants.**

Civ. A. No. 85–0791.

United States District Court,
M.D. Pennsylvania.

Oct. 21, 1986.

As Amended Nov. 10, 1986.

Laurence W. Dague, Harrisburg, Pa., Dianne E. Dusman, Hummelstown, Pa., for plaintiffs.

Andrew S. Gordon, Chief, and Calvin R. Koons, Deputy Attys. Gen., Harrisburg, Pa., for Dellarciprete, Harhigh, Fure, Brown and Kinch.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction*

Plaintiffs, Vivian M. Rode and Jay C. Hileman, commenced this action pursuant to 42 U.S.C. §§ 1983 and 1985 asserting that defendants violated their constitutional rights.[1] More specifically, plaintiff Hileman alleges that defendants, individually and as members of a conspiracy, subjected him to a course of harassment in retaliation for his testimony against the Pennsylvania State Police ("PSP"). Plaintiff Rode claims that she has also been harassed by defendants because she is the sister-in-law of Hileman. Maintaining that there is no genuine issue as to any material facts, defendants have moved for summary judgment. For the reasons set forth below, defendants' motion will be granted in part.

*Background*

Based upon the pleadings, depositions and affidavits, the following is the background of this litigation. Vivian Rode was employed by the PSP as an administrative assistant in the Personnel Bureau from 1971 until 1982. Rode alleges that in August, 1982, defendants, Dellarciprete, Harhigh, Fure, Brown and Kinch began harassing her by (1) transferring her to new positions without providing proper training; (2) refusing to provide work assignments; (3) making derogatory statements about her to fellow employees; (4) taking away her office and filing cabinet; and (5) assigning her demeaning tasks, including bulk photocopying. In addition to these actions, Rode received a two day suspension for violating administrative regulation 4-6 which prohibits employees of the PSP from publicizing information concerning the PSP without prior approval.

Rode's claims comprise the first three counts of the complaint. In Count I, Rode asserts that defendants' conduct violated her First Amendment rights to freedom of speech and association and deprived her of a property right in her employment protected by the Fourteenth Amendment. Relying on the factual allegations of Count I, Count II states a claim for conspiracy. In Count III, Rode challenges the constitutionality of administrative regulation 4-6 on the grounds of vagueness and overbreadth.

Jay Hileman, on the other hand, served as the Director of the Personnel Bureau from 1969 until 1980. In September, 1980, he was reassigned to the Area V Command Post. In August, 1982, Hileman was subpoenaed by and appeared on behalf of one Russell Clanagan, another PSP employee, in a Title VII action against the PSP. At the trial, Hileman testified that the PSP had a history of engaging in racially discriminatory employment practices. He claims that in retaliation for his unfavorable testimony, he was subjected to a course of harassment, including (1) a transfer to a PSP station more than 200 miles from his home; (2) repeated denials of requests for hardship transfers; (3) rejections of applications for positions for which he was qualified and for duty related training; (4) unjustified denials of requests for administrative leave, overtime pay and business related expenses; and (5) the initiation of unfounded disciplinary proceedings against him.

Hileman's claims are contained in Counts IV through VII. In Count IV, he alleges that the actions of defendants, Cochran, Dellarciprete, and Harhigh, caused him to suffer deprivations of his First Amendment right to freedom of speech and his right to property under the Fourteenth Amendment. Count V reiterates those allegations as the basis for a conspiracy claim. Count VI alleges that defendants, Cochran and the PSP violated the terms of the consent

---

**1.** In addition to the constitutional claims, Hileman has also brought claims under Title VII, 42 U.S.C. § 2000e-3 and under the consent decree entered in *Bolden v. Pennsylvania State Police*, No. 73-2604 (E.D.Pa.1974).

decree entered into in *Bolden v. Pennsylvania State Police*, 371 F.Supp. 1096 (E.D. Pa.1974) by retaliating against him for his testimony in the *Clanagan* case. Finally in Count VII, Hileman claims that the retaliatory actions taken by defendants against him constituted unlawful employment practices prohibited by 42 U.S.C. § 2000e–3.

*Discussion*

■ Defendants' motion will be evaluated under the following, well established standard: [2]

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and must resolve all reasonable doubts as to the existence of a genuine issue of material fact against the movant.

*Hersh v. Allen Products Co., Inc.*, 789 F.2d 230, 232 (3d Cir.1986).

■ Defendants initially argue that summary judgment should be granted in their favor on the entire complaint because plaintiffs have failed to establish an essential element of their cause of action. In this regard, defendants assert that plaintiffs have not demonstrated that the alleged retaliation was motivated by racial prejudice. In support of this argument, defendants rely upon plaintiffs' admissions that the individual defendants are not racially preju-

diced and have not been known to be racially prejudiced. Plaintiffs contend that their opinions concerning defendants' general attitudes are not relevant to the issue of defendants' subjective motivation.

We conclude that defendants' argument is without merit. Assuming that plaintiffs must demonstrate that defendants intentionally discriminated against them, the relevant inquiry here is whether defendants were, in fact, motivated by racial prejudice or animus. Contrary to defendants' assertion, plaintiffs' admissions concerning the individual defendants would not preclude a jury from finding defendants were motivated by racial prejudice in a particular situation. Plaintiffs' admissions are certainly relevant evidence which the jury may consider in determining whether defendants acted with the requisite state of mind, but are not determinative of the issue. Whether or not defendants were motivated by racial prejudice is an issue to be resolved by the jury after hearing all of the evidence. Having reached this conclusion we will now address plaintiffs' claims individually.[3]

### I. *Civil Rights Claims of Plaintiff Rode*

#### A. *Property Interest*

■ In Counts I and II plaintiff Rode alleges that defendants, individually and as members of a conspiracy, engaged in a course of discriminatory conduct designed to prevent her from associating with plaintiff Hileman and to deter him from testifying in the future. She further alleges that her First and Fourteenth Amendment rights were violated by defendants' conduct. More specifically, Rode maintains

---

**2.** Plaintiffs have misstated the standard governing summary judgment motions. For instance plaintiffs assert that formal allegations of a complaint are sufficient to create a genuine issue of material fact even though affidavits to the contrary are submitted. Plaintiffs' contention is contrary to Fed.R.Civ.P. 56(e) which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his

response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**3.** Even if we were to accept defendants' argument, it would not entitle them to summary judgment against Hileman to the extent that he is asserting that defendants' conduct was motivated by his testimony against the PSP.

that defendants deprived her of a property right in her employment by (1) transferring her from the Personnel Bureau; (2) assigning her demeaning tasks; (3) failing to provide training and work assignments; (4) making derogatory statements about her to fellow employees;[4] and (5) taking away her office and filing cabinet.

■ "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the due process clause." *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30, 39 (1978). In determining whether a plaintiff has been deprived of an interest protected by the Fourteenth Amendment it must be kept in mind that the Fourteenth Amendment was not intended as a substitute for state law. Consistent with principle, we conclude that personnel decisions short of termination do not constitute deprivations of a property interest under the Fourteenth Amendment. *See Wargat v. Long,* 590 F.Supp. 1213 (D.Conn.1984); *Warfield v. Adams,* 582 F.Supp. 111 (S.D.Ind.1984). As the Seventh Circuit in *Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983) explained:

> [T]he Constitution must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.

In the present case, Rode's complaints concern personnel decisions regarding transfers, work assignments, job training and office space. Rode, however, does not maintain that she was ever discharged by the PSP. Thus, absent termination, we conclude that she has not been deprived of a property interest safeguarded by the Fourteenth Amendment.

### B. *First Amendment Violations*

Rode also asserts that defendants infringed upon her First Amendment rights by suspending her for two days for violating administrative regulation 4–6. Rode was disciplined for consenting to an interview with a reporter from the *Paxton Herald* which ultimately led to the publication of an article in the *Herald* on June 1, 1983 containing Rode's allegations that she was being subjected to discriminatory employment practices by the PSP. Defendants argue that Rode's First Amendment claim is without merit because she did not engage in speech protected by the First Amendment.

The parties agree that resolution of Rode's First Amendment claim is governed by the Supreme Court's decision in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In *Connick,* an assistant district attorney was terminated for circulating a questionnaire to other district attorneys expressing her dissatisfaction with the office management. The plaintiff claimed that her termination violated the First Amendment. Interpreting the First Amendment the Court held that:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

Thus, the critical issue here is whether Rode spoke upon matters of public concern or upon matters of a personal interest. Such a determination must be made by examining "the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147–48, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

---

**4.** Rode has not claimed a deprivation of a liberty interest arising from the derogatory statements and even if such a claim were made it would be meritless since she was never discharged. *See Wargat v. Long,* 590 F.Supp. 1213 (D.Conn.1984).

■ After carefully reviewing the article appearing in the *Paxton Herald*, we find that Rode's speech did not involve matters of public interest. Instead, Rode's speech is more accurately characterized as an employee dispute over personnel policies. For example, Rode complains in the article that she was relieved from her duties under the Benefits Program and relocated from an inner office to an outer cubicle. She also asserts that at various times she has been given either too much or too little work to do. These grievances are purely private concerns. This conclusion is confirmed by Rode's admission that she was only commenting upon her personal relationship with her superiors, Fure and Harhigh. At the deposition Rode was asked the following questions and gave the following answers:

> Q So, if I am correct, you did not seek out this report of having, trying to bring to light some major public issue or anything?
>
> A No. No, definitely not.
>
> Q It was simply you agreed to speak to a reporter concerning your own personal problem with an employment situation that existed?
>
> A Yes.

(Deposition of Vivian Rode at 44).

Accordingly, we conclude that Rode's First Amendment right to freedom of speech has not been violated by defendants.

■ Finally, Rode contends that defendants' attempts to deter her from associating with plaintiff Hileman, her brother-in-law, constituted a violation of her right to freedom of association. We were recently presented with a similar issue in *Cole v. Allied Services for the Handicapped*, No. 85–1851 (M.D.Pa. June 13, 1986) (appeal pending) [Available on WESTLAW, DCTU database]. In *Cole*, the plaintiff alleged, *inter alia*, that defendant terminated his employment because of his relationship with his brother, a former executive of defendant. Concluding that plaintiff's relationship with his brother was not protected by the First Amendment, we stated:

In the instant case, plaintiffs are relying upon the first line of decisions concerning the right to enter into and maintain close personal relationships. Unfortunately, the Supreme Court has not precisely defined the relationships entitled to first amendment protection. The Court, however, has held that relationships which attend the creation and sustenance of family such as marriage, *Zablocki v. Redhail*, 434 U.S. 374, 54 L.Ed.2d 618, 98 S.Ct. 673 (1978), childbirth, *Carey v. Population Services International*, 431 U.S. 678, 52 L.Ed.2d 675, 97 S.Ct. 2010 (1977), and the raising and education of children, *Smith v. Organization of Foster Families*, 431 U.S. 816, 53 L.Ed.2d 14, 97 S.Ct. 2094 (1977) are worthy of constitutional protection. Plaintiffs have not persuaded us that George Coles' interest in associating with his brother rises to the same level of importance as decisions relating to marriage, childbirth, and childrearing. We have found no cases which have held that the relationship between brothers is entitled to this sort of protection and we decline to be the first.

*Cole*, slip op. at 9.

Applying this analysis, we likewise conclude that Rode's relationship with her brother-in-law is not entitled to First Amendment protection.

## II. Overbreadth Challenge

■ In Count III, Rode is challenging the constitutionality of administrative regulation 4–6. She contends that the regulation is, on its face, vague and overbroad and thus unconstitutional. Defendants argue that since Rode's speech was not protected by the First Amendment, and application of the regulation to her did not implicate First Amendment interests, it is unnecessary to reach the issue of the constitutionality of administrative regulation 4–6. We disagree.

The Supreme Court has made it clear that the "overbreadth" doctrine "permits the invalidation of regulations on First Amendment grounds even when the liti-

gant challenging the regulation has engaged in no constitutionally protected activity." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 565 n. 8, 100 S.Ct. 2343, 2351 n. 8, 65 L.Ed.2d 341, 350 n. 8, (1980). This result is "justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights" *Coates v. City of Cincinnati,* 402 U.S. 611, 620, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214, 221 (1971) (White, J., concurring). Thus, we have no choice but to consider Rode's constitutional challenge to administrative regulation 4–6. If Rode wishes to pursue her attack on the constitutionality of administrative regulation 4–6, then she shall file a brief in support of her contention that it is unconstitutional within twenty (20) days of the date of this order. Thereafter, briefing shall be in accordance with the local rules.

### III. Civil Rights Claim of Plaintiff Hileman

We turn now to the allegations of plaintiff Hileman. In Counts IV and V, Hileman asserts that defendants, Cochran, Dellarciprete and Harhigh, subjected him to a course of harassment in retaliation for his testimony against the PSP. Hileman claims that defendants' acts of retaliation violated his right to freedom of speech. He also claims that defendants' unlawful conduct caused him to suffer a deprivation of his right to property.[5]

█ In order to state a claim for relief under the First Amendment Hileman must establish that he (1) was engaged in conduct protected by the First Amendment and (2) that the conduct was the motivating factor behind defendants' alleged retaliatory acts. *Mt. Healthy City School District Board of Education v. Doyle,* 429

U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In the present case, it is unquestioned that Hileman's testimony was speech protected by the First Amendment. The dispute between the parties arises over the question of motivation. The parties offer completely different explanations for the actions taken with respect to Hileman and on this basis we find that there is a disputed issue of material facts concerning this question which precludes the granting of summary judgment in favor of defendants.[6]

█ We will, however, grant summary judgment in favor of defendant, Harhigh on the grounds that Hileman's claims against him (Counts IV and V) are barred by the applicable statute of limitations. It is undisputed that Harhigh terminated his employment relationship with the PSP in November, 1983 and had no further dealings with the PSP or Hileman. It is also undisputed that Hileman did not file his complaint until December 23, 1985. Thus, applying the two year statute of limitations for civil rights actions, *Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985), we conclude that Hileman's claims against Harhigh are time barred.

### IV. Title VII Claim

Count VII contains Hileman's allegations that defendants, Dellarciprete, Cochran, the PSP and the Commonwealth of Pennsylvania committed unlawful employment practices in violation of 42 U.S.C. § 2000e–3. In support of this claim, Hileman alleges that he was "qualified for the positions he held at the time of his retaliatory transfer and for positions he unsuccessfully sought after his transfer." (Complaint at ¶ 104). Defendants argue that Hileman's Title VII claim should be dismissed because (1) he did not suffer an injury compensable under federal law, (2) the employment ac-

---

5. For the reasons previously set forth in this memorandum, we conclude that because Hileman was not dismissed in retaliation for his testimony he has not suffered a deprivation of property interest.

6. We reject the arguments of defendants, Cochran and Dellarciprete, that Count IV and V should be dismissed as to them. Viewing the evidence in the light most favorable to Hileman, the material facts concerning defendants' participation in the alleged violations of plaintiffs' constitutional rights are in dispute.

tions taken against Hileman do not rise to the level of retaliation contemplated by Title VII and (3) Hileman's claim is barred by the doctrine of laches.

Defendants argue that since Hileman does not seek reinstatement and cannot seek back pay (he was never demoted or suspended), he has failed to state a claim upon which relief can be granted. An employee successful in demonstrating a violation of Title VII is entitled to recover:

> ... such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate.... Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e–5(g).

██ After reviewing Hileman's complaint we conclude that he has alleged an injury compensable under Title VII. For example, Hileman alleges that he suffered a loss of income through defendants' failure to fairly administer such matters as overtime. Such an injury would appear to be compensable as an equitable remedy under § 2000e–5(g). *See Miller v. Bolger,* 802 F.2d 660 (3d Cir.1986) (Title VII remedies are viewed as equitable make-whole relief to redress discrimination).

Relying upon *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982) defendants next argue Hileman has failed to state a claim under Title VII because the alleged retaliatory acts were not "sufficiently severe and persistent to affect *seriously* the psychological well-being of the employee in question." *Id.* at 904. Defendants' reliance upon *Dundee* is misplaced. *Dundee* does not bear on the issue before us as it dealt with a claim that the employer's sexual harassment created a hostile working environment. Contrary to defendants' contention, we believe that the more appropriate test for analyzing a claim under § 2000e–3 was set forth in *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43 (2nd Cir.

1980). Under *Grant,* the plaintiff need only show that he was disadvantaged by the employment actions of his employer. *Id.* at 46. In the instant case, Hileman's allegations of numerous adverse employment decisions are sufficient to proceed under § 2000e–3.

██ Finally, defendants contend that the Title VII claim is barred by the doctrine of laches. Defendants, however, have not pursued this claim in their reply brief and it appears to be withdrawn. In any event, we conclude that it is without merit. To establish the defense of laches, defendants have the burden of proving "inexcusable delay in light of the case's equities and prejudice to [themselves]." *Pierre v. Hess Oil Virgin Islands Corp.,* 624 F.2d 445, 450 (3d Cir.1980). Defendants have fallen short on their burden of proving that Hileman's delay in initiating this action prejudiced them and accordingly we conclude that the doctrine of laches does not bar Hileman's Title VII claim.

## V. Consent Decree Claim

Finally, in Count VI Hileman alleges that defendants Cochran and the PSP violated the terms of the *Bolden* consent decree by failing to use their best efforts to prevent the retaliation alleged to have taken place in this action. Defendants have put forth various arguments in support of their contention that this claim should be dismissed. Without going into detail, we conclude that essentially for the reasons previously set forth in this memorandum, these arguments are meritless. Accordingly, Count VI will not be dismissed.

An appropriate order will be issued.