**Ruth Ann BOUGHER, Appellant**

v.

**UNIVERSITY OF PITTSBURGH, Wesley W. Posvar and Trevor Melia, in their official and individual capacities, Maryann Bishop Coffey**

No. 89–3178.

United States Court of Appeals, Third Circuit.

Argued July 17, 1989.

Decided Aug. 15, 1989.

As Amended Oct. 24, 1989.
Rehearing and Rehearing In Banc Denied Oct. 26, 1989.

Matthew E. Jackson, Jr. (argued), Pittsburgh, Pa., for appellant.

Martha Hartle Munsch (argued), Steven P. Fulton, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellees.

Before STAPLETON, SCIRICA, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Appellant Ruth Ann Bougher, a student at the University of Pittsburgh, raises issues on this appeal pertaining to the application of "hostile environment" sexual harassment principles developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq.* (West 1981), to alleged sexual discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C.A. § 1681 (West 1978). Her four-count complaint also alleges sexual harassment by one of her professors at the University in violation of the Reconstruction Era Civil Rights Acts, 42 U.S.C.A. §§ 1983 and 1985(3) (West 1981), and a state claim for intentional infliction of emotional distress. The district court rejected her claims, granting summary judgment for the University and the individual defendants,[1] and dismissing the complaint. 713 F.Supp. 139. Appellant appealed to this court pursuant to 28 U.S.C.A. § 1291 (West Supp.1989). We affirm, although not entirely on the same grounds relied on by the district court.

### I.

This case has its genesis in a relationship between Bougher and University professor, Trevor Melia, the exact nature of which is in some dispute. What is known is that Bougher was an undergraduate student at the University of Pittsburgh from 1973 through December 1978 when she received her undergraduate degree in speech. During the winter term of 1976, Bougher took her only course with Melia. After that time, Bougher took no other course with Melia, nor was Melia her university-appointed advisor, though Bougher contends that Melia informally assumed that role during both her undergraduate and graduate career. Following her graduation in 1978, Bougher enlisted in the Air Force Officer's Training School for eight months. After receiving an honorable discharge, she returned to the University in September 1979 and enrolled in the graduate school East Asian Interdisciplinary Program.[2] Melia taught none of her courses in this program.

Bougher claims that although Melia initially took a special interest in her academic career, that interest became sexual

---

1. Appellees-defendants include the University of Pittsburgh, Trevor Melia, a University professor, Wesley W. Posvar, the University Chancellor, and Maryann Bishop Coffey, the University Director of Affirmative Action. Melia, Posvar, and Coffey have been sued in their individual and official capacities. Only Melia is named as defendant to the state tort claim of intentional infliction of emotional distress.

2. Although Bougher may have taken classes on an informal basis after 1982, she states in her brief to this court that she withdrew from the formal graduate degree program sometime in 1982. Br. at 16.

in nature in the spring of 1976 following the conclusion of her course with Melia. Defendants describe the ensuing relationship as consensual, one that "typif[ies] a 'dating' relationship." Bougher contends, however, that Melia sexually assaulted her and subsequently sexually coerced her. Bougher further alleges that, in response to her efforts to end the relationship, Melia's behavior became abusive and harassing. As a result of this behavior, Bougher claims she became depressed and suicidal for which she eventually sought psychiatric therapy.

Upon her return to the University, Bougher alleges that, although Melia was a member of a different department at the University, he insisted that he become involved in her graduate program, promising her a teaching assistantship and the opportunity to co-author an academic paper with him as well as other publishing opportunities, and offering to act as her informal academic advisor. She further alleges that Melia at this time again coerced or harassed her into a sexual relationship. She characterizes their relationship as one in which he would make drunken and abusive overtures to her until she felt compelled to comply with his sexual demands. She also claims that he became physically violent towards her. As a result of this "constant harassment," Bougher contends that she was unable to maintain her academic work, eventually forcing her to discontinue her graduate program in 1982, and that she further suffered both physical and emotional distress.

Although Bougher claims that she complained to another faculty member about Melia as early as 1981, she did not seek the aid of Dr. Coffey, the Director of Affirmative Action, until February 1982. Rather than provide any assistance, Bougher alleges that Dr. Coffey became abusive and hostile towards her. Bougher also complained to Jerome Martin, Ph.D., an assistant to the University Chancellor, Wesley Posvar, who informed her that Dr. Coffey's decision was final.

The sexual relationship between Bougher and Melia ended sometime in January 1983,

and Bougher admits that Melia has not made any sexual propositions to her since December 1983. Bougher Dep. Tr. at 357–60, App. at Tab G. Bougher contends, however, that after their sexual relationship ended, Melia, with the aid of another University employee, continued to harass and to threaten her. These alleged incidents ranged from threatening her with a knife and acid to a series of threatening phone calls to merely sitting near her in a public restaurant and staring.

In the summer of 1984, Bougher returned to Dr. Coffey to institute formal action against Melia. The matter was referred to Brenda Pardini, a staff member of the Student Judicial Affairs Office. Pardini drafted a complaint which Bougher refused to sign. Bougher informed Pardini that she had elected to pursue her complaint through the Pennsylvania Human Relations Commission (PHRC) rather than through the University system. On July 26, 1984, Bougher filed a complaint with the PHRC.

On May 27, 1986, Bougher filed a pro se complaint in the United States District Court for the Western District of Pennsylvania. In her second amended complaint, filed with the aid of counsel, Bougher asserted claims under Title IX, and 42 U.S. C.A. §§ 1983 and 1985(3), as well as a claim of intentional infliction of emotional distress against Melia in his official and individual capacity. Bougher likewise asserted claims against the University, Chancellor Posvar, and Dr. Coffey, also in their official and individual capacities under Title IX and 42 U.S.C.A. §§ 1983 and 1985(3). With respect to these defendants, Bougher specifically alleges that the University and the individual defendants failed to establish and implement policies in accordance with Title IX which would prohibit gender based discrimination, failed to respond appropriately to her individual complaint against Melia, and thereby permitted to develop an environment hostile to women in violation of Title IX.

The district court disagreed with Bougher's contentions, ultimately granting defendants summary judgment on all counts and dismissing the complaint in its entirety

with prejudice. With respect to Title IX, the court found that Bougher failed to allege a *quid pro quo* claim because she did not allege that either the University, Melia, or the other defendants excluded or denied her benefits on the basis of her sex. The court also rejected Bougher's contentions that the "hostile environment" theory of sexual discrimination adopted under Title VII for the workplace should apply equally to sexual discrimination in education under Title IX.[3]

With respect to section 1985(3), the court concluded not only that the allegations of conspiracy were too vague to establish a cause of action but that section 1985(3) liability does not exist among agents of a single entity, here the University. The court similarly found that Bougher failed to state a cause of action under section 1983. The court concluded that Bougher's right to be free of unwanted sexual advances was at most a tort claim and did not rise to the level of a constitutional right or a federal substantive due process right as section 1983 requires. The court also rejected Bougher's effort to remedy Title IX violations through section 1983, holding that Title IX was self-enforcing. Finally, the court held that the state law claim was barred by the statute of limitations.

Although we affirm the court's ultimate judgment, we decline to adopt its reasoning in toto and we find it unnecessary to reach the question, important though it may be, whether evidence of a hostile environment is sufficient to sustain a claim of sexual discrimination in education in violation of Title IX. Instead, we hold that the allegations within the applicable limitations period fail to state a cause of action.

## II.

### A. Title IX.

Title IX of the Education Amendments of 1972 provides, in relevant part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C.A. § 1681(a). Although Title IX does not contain a separate statute of limitations, the corresponding regulations adopt the procedures applicable to Title VI, 42 U.S.C.A. § 2000d, *et seq.* (West 1981 & Supp.1989). 34 C.F.R. § 106.71 (1988).[4] Title VI regulations, in turn, provide that "[a] complaint must be filed not later than 180 days from the date of the alleged discrimination...." 34 C.F.R. § 100.7 (1988).

■ Plaintiff vigorously argues, however, that the statute of limitations for judicial proceedings are not bound by the 180 day limitations period required to initiate administrative proceedings. We think plaintiff's argument is well taken. The regulatory scheme for federal administrative review of an educational institution's compliance with Title IX is not the applicable standard to determine whether a judicial proceeding to enforce rights under Title IX has been initiated in a timely manner. "The practical difficulties facing an aggrieved person who invokes administrative remedies are strikingly different," from the difficulties which face an aggrieved person seeking judicial relief. *Burnett v. Gratan*, 468 U.S. 42, 51, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). We therefore must "borrow" the state statute of limitations in the cause of action most similar to the plaintiff's Title IX claim. *Reed v. United Transportation Union*, —— U.S. ——, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989).

■ Defendant contends that the appropriate state statute of limitations is either the 180 day limitations period provided for in the Pennsylvania Education Act, 24 P.S. § 5007, or the identical period under the Pennsylvania Human Relations Act, 43 P.S. § 959(g). Both of these statutes, however, provide for administrative proceedings, and are not directly applicable to judicial proceedings. Thus, under the Supreme Court's ruling in *Burnett*, these limitations periods

---

**3.** Because it is undisputed that Melia, Chancellor Posvar, and Dr. Coffey did not receive federal funds, the court also granted summary judgment for these defendants in their individual capacities. On appeal, Bougher does not challenge the court's decision as to these defendants.

**4.** 34 C.F.R. § 106.71 provides as follows:

The procedural provisions applicable to title VI of the Civil Rights Act of 1964 are hereby adopted and incorporated herein by reference. These procedures may be found at 34 CFR 100.6–100.11 and 34 CFR, Part 101.

are not the proper periods to borrow. Here, we conclude that the most analogous statute of limitations, as in section 1983 and 1985 claims, *see* infra B and C, is Pennsylvania's two year statute of limitations period applicable to personal injury actions, 42 Pa. Const. Stat. Ann. § 5524 (Purdon Supp.1989). This action was filed on May 27, 1986. Consequently, unlawful acts committed before May 27, 1984, if any, fall beyond the relevant limitations period.

■ Although Bougher alleges defendants committed some unlawful acts during the relevant time period, these actions do not violate title IX. Bougher first claims that sometime in 1986 Melia sat near her in a restaurant and "glared at her in a threatening manner." Bougher similarly alleges that sometime in 1988 she again saw Melia in a public restaurant. She contends that he pointed at her and "eyed her from head to toe as if he was looking at a piece of horse flesh." Bougher states that she "found his behavior menacing and threatening, considering everything that has occurred between them." She does not claim, however, that these meetings were anything more than chance public encounters, occurring well after the termination of any relationship between Melia and herself. Such actions, without more, do not rise to the level of a Title IX violation. Because Bougher has failed to allege any actionable violations within the applicable limitations period under Title IX,[5] the court properly dismissed her Title IX claim.

### B. Section 1983.

Bougher next alleges that defendants violated section 1983 of the Civil Rights Act. To recover under section 1983, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived a person of rights, privileges, and immunities secured by the Constitution. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The district court here determined that defendants were entitled to summary judg-

ment on the section 1983 claim because Bougher failed to identify a protected constitutional or federal substantive due process right which defendants violated. Specifically, the court held that, Title IX notwithstanding, the alleged failure to protect Bougher from Melia's unwelcome sexual advances constituted a state law tort action which is not actionable under section 1983. The court further held that Bougher was precluded from asserting Title IX as an independent basis for section 1983 because section 1983 was not intended as a remedy for statutes, such as Title IX, which are comprehensive, self-enforcing schemes. Although we agree with the court that summary judgment is an appropriate disposition of the section 1983 claim, we hold that the claim should be disposed on the threshold basis of the statute of limitations.

■ Although Congress did not provide a specific federal statute of limitations for claims under the Civil Rights Act, the Supreme Court has held that 42 U.S.C.A. § 1988 (West 1981) directs federal courts to "borrow" the state statute of limitations for the most analogous cause of action. *See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). In analyzing section 1983 claims in particular, the Court determined that these claims are most analogous to common law tort actions because a section 1983 claim involves the deprivation of life, liberty, or property. Accordingly, the Court held that, as a matter of federal law, all section 1983 claims are subject to the state statute of limitations for personal injury actions. *Id.* at 280, 105 S.Ct. at 1949; *Springfield Township School Dist. v. Knoll,* 471 U.S. 288, 289, 105 S.Ct. 2065, 2065, 85 L.Ed.2d 275 (1985) (per curiam). Here, the appropriate limitations period for section 1983 claim is Pennsylvania's two-year statute of limitations applicable to personal injury actions, 42 Pa.Cons.Stat.Ann. § 5524 (Purdon Supp.1989). *See, e.g., Fitzgerald v. Larson,* 769 F.2d 160, 162 (3d Cir.1985); *Smith v. City of Pittsburgh,* 764 F.2d 188, 194 (3d Cir.), *cert. denied,* 474 U.S. 950, 106 S.Ct.

---

**5.** Although Bougher asserts, without support, that Melia threatened her life in 1986, in her deposition she described this incident as occur-

ring in 1983. The court properly assigned 1983 as the date of the alleged incident, and Bougher does not dispute this finding.

349, 88 L.Ed.2d 297 (1985). Because Bougher failed to allege any unlawful acts actionable under section 1983 during the two year period prior to filing this complaint, that is, since May 27, 1984, she fails to state a cause of action under section 1983.

As to Melia, Bougher concedes that she has not had any physical or verbal contact with him within the limitations period. According to the record, Bougher neither has had any physical contact with Melia since January 1983 nor has she had any verbal contact with him since December 1983. These acts, even if otherwise unlawful, fall beyond the two year statute of limitations.

Moreover, since May 27, 1984, Bougher's contact with Melia has been limited to the two chance encounters in public restaurants, as we have previously discussed. Again, although Bougher may have found Melia's presence "menacing," his actions did not amount to a deprivation of constitutional or federally protected rights within the contemplation of section 1983. Therefore, absent any allegations of unlawful conduct cognizable under section 1983 within the two year period prior to the filing of her complaint, the court properly dismissed the section 1983 claim against Melia.

The section 1983 claim pending against the remaining defendants are similarly time-barred. According to the record, the University actively pursued resolution of Bougher's claim within the two-year period preceding the filing of this complaint. It is undisputed that in the summer of 1984 Dr. Coffey discussed proceeding with a formal, internal university complaint against Melia. Furthermore, that complaint was referred to Brenda Pardini, a staff member in charge of the student judicial board, who drafted a complaint on Bougher's behalf. In a letter dated August 1, 1984, from Pardini to Bougher, Pardini informed Bougher that although the complaint had been drafted no further action could be taken until Bougher approved and signed the complaint. It is also undisputed that by letter dated August 20, 1984, Bougher informed Pardini that she had elected to pursue her options with the PHRC rather than continue with the university procedures. After that time, Bougher apparent-ly made no further effort to seek the aid of the University, Dr. Coffey, or Chancellor Posvar. Therefore, regardless of any alleged action that occurred prior to May 27, 1984, neither the University nor the other defendants committed any actionable wrong under section 1983 within the two year period preceding the filing of the complaint.

### C.  Section 1985(3).

Bougher next asserts that defendants conspired to violate her constitutional and federal substantive due process rights in violation of 42 U.S.C.A. § 1985(3). In order to state a claim under 1985(3), a plaintiff must allege that defendants, motivated by a class-based invidiously discriminatory animus, conspired to deprive plaintiff of the equal protection rights of the laws or of equal privileges and immunities under the laws and that plaintiff was thereby injured. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). The district court here dismissed the section 1985(3) claim on the ground that the allegation of a conspiracy among two or more agents of a single entity, such as the University, is insufficient, as a matter of law, to state a cause of action under section 1985(3). Again, although we agree with the court's ultimate disposition of this claim, we find it unnecessary to reach the merits of the issue as this claim is also time-barred.

Although the Court in *Wilson* only addressed the question of whether section 1983 claims are governed by the state statute of limitations for personal injury actions, we hold that section 1985(3) claims are subject to the same limitations period. As the Court found significant with respect to section 1983, section 1985(3) also seeks to remedy the wrongful deprivation of rights, privileges, and immunities. Because section 1985(3) violations necessarily involve a conspiracy to deprive another of rights, privileges, and immunities, the underlying deprivations sound in tort. Accordingly, we hold that Pennsylvania's two-year statute of limitations for personal injury actions applies to section 1985(3) claims. *See, e.g., Baird v. New Britain Township,* No. 88–9743, slip op. at 7, 1989 WL 46185 (E.D.Pa. April 26, 1989); *Rode v.*

*Dellarciprete*, 646 F.Supp. 876, 882 (M.D. Pa.1986).

Bougher claims here that the incidents alleged with respect to her section 1983 claim were undertaken by defendants in concert with each other in violation of section 1985(3). Her cause of action, if any, accrued when she knew or should have known of the alleged civil rights violation. *See Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982) (per curiam). The statute of limitations, accordingly, runs from the date of each overt act causing damage to plaintiff. *See Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir.1984), *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985); *Ammlung v. City of Chester*, 494 F.2d 811, 814–15 (3d Cir.1974); *Drum v. Nasuti*, 648 F.Supp. 888, 903 (E.D.Pa. 1986), *aff'd*, 831 F.2d 286 (3d Cir.1987). As we have discussed, however, none of the activity alleged to have occurred within the statute of limitations period constituted unlawful acts in violation of section 1983. The unlawful activity, if any, occurred before May 27, 1984. Because the section 1985(3) claim is subject to the same two year statute of limitations as the section 1983 claim, Bougher's section 1985(3) claim is also time-barred.

### D. Intentional Infliction of Emotional Distress.

■ Bougher asserts as her final claim the common law tort of intentional infliction of emotional distress against Melia. Under Pennsylvania law, claims alleging the commission of intentional torts are also subject to a two-year statute of limitations. 42 Pa.C.S.A. § 5524 (Purdon Supp. 1988). The district court properly concluded that the statute of limitations bars this claim.

The Pennsylvania courts look to the Restatement (Second) of Torts for guidance as to the "outrageous conduct" element of the tort of intentional infliction of emotional distress. *See Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 190, 527 A.2d 988, 991 (1987). Section 46(1) of the Restatement provides, as follows:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional dis-

tress, and if bodily harm to the other results from it, for such bodily harm.

The tort of intentional infliction of severe emotional distress requires therefore that the alleged conduct be so extreme and outrageous as to cause plaintiff emotional distress. *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir.1989); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979) (in banc). In addition, as we recognized in *Williams*, Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress. *See Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 197, 527 A.2d 988, 995 (1987) ("[I]f section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence); *see also Williams*, 875 F.2d at 52.

As discussed, the only wrongful acts Melia allegedly committed during the two year period preceding the filing of this lawsuit were the two encounters in public restaurants where Melia allegedly stared at Bougher in a menacing manner. Here, the court properly determined that these incidents were not so outrageous as to constitute intentional infliction of emotional distress. Accordingly, the court properly dismissed Bougher's state law claim of intentional infliction of emotional distress.

### III.

Bougher's remaining claims on appeal relate to the court's refusal to grant leave to amend her complaint and to compel discovery of certain peer review records. Bougher first alleges that the court abused its discretion in denying her leave to amend her complaint to include "all the operative facts." Because Bougher fails to provide this court with any suggestion as to which operative facts were wrongfully excluded, we affirm the court's refusal to grant leave to amend the complaint.

■ Bougher next contends that the court abused its discretion in denying her motion to compel discovery of Melia's peer review records. Bougher claims that these records are relevant to show whether (1) other professors were aware of Melia's in-

teraction with students, (2) whether he was competent to perform his job, and (3) whether there had been any other complaints lodged against Melia for sexual harassment or other misconduct. Since Bougher has not placed Melia's professional competence in issue, the only relevant purpose for seeking these records is to discover information relating to possible other complaints of sexual misconduct.

Although these records would be arguably relevant if they contained such information, as defendants observe, Bougher previously requested any and all documents tending to indicate complaints of sexual harassment or other misconduct lodged against Melia. The prior discovery request was sufficiently broad to encompass the peer review records if they did contain the desired information. Because the records were not produced in response to that request, it can be assumed that they were devoid of any relevant information. Therefore, the court properly exercised its discretion to deny the subsequent discovery request targeted specifically at the peer review records both because it was essentially duplicative of the earlier request and because they did not contain information relevant to plaintiff's cause of action.

### IV.

Accordingly, the district court's grant of summary judgment for failure to state a cause of action within the relevant limitations period will be affirmed. The court's refusal both to grant leave and to amend plaintiff's complaint to include all the operative facts and to compel discovery of the peer review records will also be affirmed.