**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRISTA STANLEY, an individual,
            *Plaintiff-Appellant,*

v.

TRUSTEES OF THE CALIFORNIA STATE
UNIVERSITY; CALIFORNIA STATE
UNIVERSITY, SACRAMENTO,
            *Defendants-Appellees.*

No. 04-15134

D.C. No.
CV-02-01131-MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
October 18, 2005—San Francisco, California

Filed January 11, 2006

Before: J. Clifford Wallace, Stephen S. Trott, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Wallace

---

**COUNSEL**

Chad Carlock, Law Offices of Chad Carlock, Davis, California, for plaintiff-appellant Trista Stanley.

Peter W. Thompson, Deputy Attorney General, Sacramento, California, for defendant-appellees Trustees of the California State University.

---

**OPINION**

WALLACE, Senior Circuit Judge:

Trista Stanley appeals from a judgment on the pleadings based upon statute of limitations and state sovereign immunity grounds. We have jurisdiction pursuant to 28 U.S.C. § 1291(a), and we affirm.

**I.**

Stanley was intermittently a student at California State University, Sacramento (University) from 1998 to 2000. Stanley alleges that Richard Savino, her classical guitar professor and faculty advisor, sexually harassed her beginning in 1999 and that the harassment caused her to withdraw her enrollment at the end of the spring semester in 1999. Stanley returned for the fall semester in 1999 and alleges that she was again sub-

jected to sexual harassment. Stanley reported the harassment to various University offices and again withdrew her enrollment after they did not respond to her complaints. She returned to the University a final time in the spring of 2000. She alleges she was again forced to withdraw after learning that other students and faculty knew about her experience with Savino, which created an uncomfortable environment. The last alleged incident of sexual harassment occurred in May 2000.

In September 2000, Stanley submitted a formal complaint of sexual harassment to the University. The alleged sexual harassment consisted of unwanted advances, physical contact, and sexually-charged comments. The University conducted an investigation and on January 17, 2001, Peter Lau, Director of the Equal Opportunity/Affirmative Action Office, sent Stanley a letter stating: "After receiving the [investigation] report I have concluded that Professor Savino violated University Policy. The University will take appropriate action." Stanley is not aware of any disciplinary action taken as a result of the letter.

On April 27, 2001, Stanley filed a claim with the California State Board of Control seeking compensation for Savino's sexual harassment and for the University's failure to act on her complaints. Stanley did not receive a response.

Stanley filed her original action in federal court on May 23, 2002. The complaint set forth seven claims: a 20 U.S.C. § 1681 (Title IX) claim, a 42 U.S.C. § 1983 claim, and five state law claims. Stanley has asserted both quid pro quo and hostile environment sexual harassment claims. The only remaining defendants are the Trustees of the California State University (Trustees). The District Court held that all claims but the Title IX claim were barred by state sovereign immunity and the Title IX claim was barred by the applicable statute of limitations.

## II.

We turn first to what the district court referred to as the Trustee's Eleventh Amendment immunity. Courts have often "referred to the States' immunity from suit as 'Eleventh Amendment immunity.' The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999).

We review judgment on the pleadings de novo. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Id.* We review a district court's rulings on state sovereign immunity de novo. *See Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 877 (9th Cir. 2002).

**[1]** We have previously held that the Trustees are an arm of the state that can properly lay claim to sovereign immunity. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1350-51 (9th Cir. 1982). In an action for incurred monetary damages, state sovereign immunity can be overcome only by explicit abrogation by Congress pursuant to its powers under the Fourteenth Amendment or by state consent to suit. *See In re Harleston*, 331 F.3d 699, 701 (9th Cir. 2003). "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (internal quotation marks and citation omitted). Similarly, a state's "consent [must] be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (citations omitted); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (the "test for determining whether a State has waived its immunity from federal-court jurisdic-

tion is a stringent one"). "[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. Nor does it consent to suit in federal court merely by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction' . . . ." *College Sav. Bank*, 527 U.S. at 676 (internal quotation marks and citations omitted).

**[2]** The Supreme Court has previously held that Congress has properly abrogated state sovereign immunity for Title IX claims. *See Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 72 (1992). Thus, this claim is not barred on this basis.

Stanley has not argued on appeal, however, that the district court erred in dismissing her section 1983 action based on state sovereign immunity. This argument is therefore waived. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

**[3]** Stanley argues that her state law claims are not barred because Congress has abrogated state sovereign immunity by authorizing supplemental jurisdiction. The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which is silent as to sovereign immunity. The statute is a far cry from the "unmistakably clear" language required for abrogation. Additionally, there is no indication that Congress intended to exercise its powers under Section 5 of the Fourteenth Amendment by enacting section 1367; the statute only addresses the jurisdiction of federal courts, which Congress regulates through its Article I powers. Thus, we hold that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims.

Stanley also appears to argue that California has consented to suit by passing the Unruh Civil Rights Act (Act), Cal. Civ. Code §§ 51-53, which is the basis for many of her state law claims. The Act does not specifically consent to federal court actions. Even assuming the Trustees fall within the statute's "all business establishments" language, *see* Cal. Civ. Code

§ 51, the Supreme Court has held that the "any court of competent jurisdiction" language, *see* Cal. Civ. Code § 52.2, is not sufficient to constitute consent to sue in federal court. *See Coll. Sav. Bank*, 527 U.S. at 676.

**[4]** Thus, Stanley has not met the "stringent test" for establishing state consent to suit. *See id.* at 675; *see also Pennhurst*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). State sovereign immunity bars all of Stanley's state law claims.

### III.

The District Court held that Stanley's Title IX claim is subject to California's personal injury statute of limitations. We review a district court's determination of the applicable statute of limitations de novo. *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993).

**[5]** Title IX does not expressly provide any statute of limitations. Because a Title IX suit is a civil rights action, we "borrow the most appropriate state statute of limitations." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004), *cert. denied sub nom.*, *Cholla Ready Mix, Inc. v. Mendez*, 125 S.Ct. 1828 (2005)*, citing Wilson v. Garcia*, 471 U.S. 261, 268 (1985). For other civil rights actions, we have "borrowed" the state statute of limitations for personal injury. *See Taylor*, 993 F.2d at 711-12 (stating that the "statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985" and holding the same applies to actions under Title VI of the Civil Rights Act of 1964 (Title VI)). Should we apply the same ruling for Title IX claims? It appears that every circuit to consider the issue has held that Title IX also borrows the relevant state's statute of limitations for personal injury. *See Curto v.*

*Edmundson*, 392 F.3d 502, 503-04 (2d Cir. 2004), *cert. denied* 125 S.Ct. 2944 (2005); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995); *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (11th Cir. 1999). The rationale of our sister circuits is compelling, and we adopt it.

The close similarity between Title VI and Title IX also supports applying the statute of limitations for personal injury. The Supreme Court has repeatedly held that Title IX is based on Title VI and has used similar modes of analysis to resolve Title IX cases. *See*, *e.g.*, *Grove City Coll. v. Bell*, 465 U.S. 555, 556 (1984) ("The drafters of Title VI . . . approved identical language, [and] we discern no reason to believe that the Congressmen who voted for Title IX intended a different result"); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 693 n.14, 717 (1979) (concluding private right of action exists under Title IX after pointing out it was "explicitly patterned" after Title VI). We have also observed the similarity between Title VI and Title IX. *See*, *e.g.*, *Jeldness v. Pearce*, 30 F.3d 1220, 1227 (9th Cir. 1994) ("Because Title IX and Title VI use the same language, they should, as a matter of statutory interpretation, be read to require the same levels of protection and equality.") Indeed, in deciding that personal injury statutes of limitations applied to Title VI, we approvingly cited a Third Circuit case, *Bougher*, pointing out that it had applied state personal injury statute of limitations to Title IX. *Taylor*, 993 F.2d at 712.

Stanley appeared to concede at oral argument that the personal injury statutes of limitations would ordinarily apply to Title IX actions. However, Stanley argued that a California statute, Cal. Gov. Code § 945.6, which applies to state law suits "brought against a public entity on a cause of action for which a claim is required to be presented" should govern

here. That statute provides for a two-year statute of limitations if the state does not respond to a presented claim.

The Supreme Court has stressed, however, that "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support" the use of a single statute of limitations within each state. *Wilson*, 471 U.S. at 275 (holding all section 1983 actions are subject to state personal injury statute of limitations). Under Stanley's theory, the statute of limitations would vary depending on the identity of the defendant, as well as on a defendant's response to a claim presentment. This result would be in sharp opposition to these federal interests.

Stanley also misapprehends the nature of the analysis. The issue is not what statute of limitations the California legislature intended to apply to this federal action, but rather what state statute of limitations the federal claim should "borrow." Stanley's lengthy statutory interpretation analysis and speculation about the intent of California legislators is therefore irrelevant. *See Wilson*, 471 U.S. at 269 ("The importation of the policies and purposes of the States on matters of civil rights is not the primary office of the borrowing provision . . . . Congress surely did not intend to assign to state[s] . . . a conclusive role in the formative function of defining and characterizing the essential elements" of federal claims). The essential inquiry for statute of limitations "borrowing" is the nature of the harm alleged, not the identity of the named defendant.

Lastly, it is far from certain that Title IX actions can be subject to a state claim presentment requirement. In *Felder v. Casey*, 487 U.S. 131, 134 (1988), the Supreme Court held that the states may not apply such requirements to section 1983 actions. The case also strongly suggests that they cannot be applied to any federal civil rights actions. *See id.* at 153 ("A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability,

and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law"). Indeed, Stanley conceded at oral argument that the claims presentment requirement does not apply to her Title IX action. Under Stanley's proposed statute of limitations, however, the limitations period would vary based on the state's response to a requirement that does not apply to the claim, and potentially cannot be constitutionally applied to the claim.

**[6]** Therefore, we join every other federal circuit to consider this issue and hold that Title IX claims are subject to the applicable state statute of limitations for personal injury actions. At the time of the filing of this action, California's statute of limitations for personal injury was one year. *See* Cal. Civ. Proc. Code § 340.3 (West Supp. 2002). California has since changed this period to two years. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1 (West Supp. 2002). However, we have held that this change is not retroactive. *Jones*, 393 F.3d at 927 (applying California personal injury statute of limitations). Thus, a one year statute of limitations applies to Stanley's Title IX claim.

## IV.

Stanley argues that the district court failed to apply the applicable statute of limitations properly to her Title IX claim. We review whether the statute of limitations has run de novo. *Harvey v. Waldron*, 210 F.3d 1008, 1013 (9th Cir. 2000).

**[7]** Although Title IX borrows a state statute of limitations period, federal law governs the "determination of the point at which the limitations period begins to run." *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991) (citation omitted). "[T]he touchstone for determining the commencement of the limitations period is notice: 'a cause of action

generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Id.*, *quoting Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979).

**[8]** It is unnecessary to determine exactly when Stanley had notice, because she certainly had reason to know of the injury upon which her action was based when she filed a complaint alleging virtually identical claims with the State Board of Control on April 27, 2001. Stanley has not argued that this complaint tolls the statute of limitations. Thus, as a matter of law, Stanley had "reason to know" of her claim by at least April 27, 2001. Because she did not file her first action in district court until May 23, 2002, her claim is time-barred under the applicable one-year statute of limitations.

Stanley argues that her claim is nonetheless viable because of the continuing violation doctrine. But she did not cite, nor did the Trustees, the Supreme Court's recent clarification of the continuing violation doctrine, which separates discrete acts and hostile environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-19 (2002). The Court rejected application of the continuing violation doctrine for discrete acts by holding that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period. . . . [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 112-13. However, "hostile environment claims are different in kind from discrete acts." *Id.* at 115. "In order for the charge to be timely, the employee need only file a charge within . . . [the limitations period] of any act that is part of the hostile work environment." *Id.* at 118.

**[9]** It is readily apparent that the continuing violation doctrine cannot save Stanley's quid pro quo sexual harassment

claim, as no discrete acts of sexual harassment occurred within the limitations period; indeed, the last acts are alleged to have occurred in May 2000.

Stanley's hostile environment claim also cannot be saved by the continuing violation doctrine. Stanley has argued that the school's continued deliberate indifference prevents the statute of limitations from beginning to run. Not so.

"Deliberate indifference" is the standard for imputing liability to the Trustees, *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292-93 (1998), not for establishing a hostile environment. In order to support liability, the deliberate "indifference must, at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645 (1999) (internal quotation marks and citations omitted) (alteration in original); *see also Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739-40 (9th Cir. 2000) (applying *Davis* standard). Stanley, however, has not alleged that the University caused her to undergo, or be vulnerable to, any harassment during the limitations period, a time when she was not present at the University.

Additionally, Stanley has not alleged any "acts" under the *Morgan* standard within the limitations period that contributed to a hostile environment. In order to establish a sexually hostile environment based on alleged sexual harassment, Stanley must show: "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 892 (9th Cir. 2005) (as amended).

**[10]** Stanley has not been enrolled at the University since 2000. Unsurprisingly, she has not alleged that she was subjected to any sexually-natured conduct at the University dur-

ing a period when she was not present. While it is true that we have held that the mere presence of a harassing individual may constitute a hostile environment, *see Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991), we have never held the presence of an individual in a workplace or institution where the plaintiff is not present constitutes a hostile environment. The mere speculation that if she had returned the environment would have been hostile is not sufficient to establish an "act" by a defendant within the limitations period. Thus, Stanley's hostile environment claim also cannot be saved by the continuing violation doctrine.

Stanley's argument also runs afoul of *Davis*, which requires more than non-responsiveness; it requires that the indifference result in harassment or render her vulnerable to harassment. Stanley has not alleged anything of the sort occurred during the limitations period.

Moreover, Stanley's argument conflates her desired remedy with violation of Title IX in a manner that effectively vitiates the statute of limitations. Under Stanley's theory, as long as the Trustees do not provide her desired relief, they are continuing to be "deliberately indifferent" and subject to suit. At oral argument, Stanley conceded that this would allow her to bring suit twenty years from now. Even leaving *Davis* aside, we will not adopt an approach that renders the statute of limitations a virtual nullity.

**[11]** The district court thus correctly determined the applicable statute of limitations and properly applied it to Stanley's Title IX claim.

**AFFIRMED.**