William **HARPER**, Plaintiff,

v.

**GEORGIA–PACIFIC CORPORATION,**
Defendant.

No. 97–2434 G/BRE.

United States District Court,
W.D. Tennessee,
Western Division.

July 10, 1998.

Dan M. Norwood and James R. Becker, Jr., Memphis, TN, for plaintiff.

Herbert E. Gerson, Memphis, TN, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GIBBONS, Chief Judge.

Before the court is the motion of defendant Georgia–Pacific Corporation ("Georgia–Pacific") for summary judgment. Plaintiff William Harper filed this action in the Circuit Court of the State of Tennessee for the Thirtieth Judicial District at Memphis, alleging employment discrimination in violation of 42 U.S.C. § 1981 and T.C.A. § 4–21–101 *et seq.*, the Tennessee Human Rights Act ("THRA"). The case was timely removed by Georgia–Pacific to this court. For the following reasons, the court grants Georgia–Pacific's motion for summary judgment.

Harper was employed as a Remote Bulk Distribution Center Manager of Georgia–Pacific from May of 1995 until his termi-

nation on December 3, 1996. (Def.Mot.Summ.J., Harper Dep. at 45, 47). Harper alleges that he was fired because of his race, African–American. Harper further contends that Georgia–Pacific's stated reasons for his termination were mere pretext for intentional racial discrimination and that he was terminated while less-qualified Caucasian employees were retained. Georgia–Pacific claims that Harper was discharged due to the reduction of Georgia–Pacific's workforce.

Prior to joining Georgia–Pacific, Harper held the position of distribution center manager at UL Logistics with which Georgia–Pacific had a contract to run the logistics operations for its facilities. (Harper Dep. at 35–36). Harper had been employed at UL Logistics since March of 1995. (Harper Dep. at 36). In May of 1995 Georgia–Pacific terminated its arrangement with UL Logistics, opting instead to create its own distribution center and hire some of UL Logistics's employees directly, Harper included. (Harper Dep. at 45). During his employment at Georgia–Pacific, Harper received consistently satisfactory job reviews and two raises. (Harper Dep. at 55, 57; Pl.Resp. Exs. 5, 6, 7, and 9). Harper's management evaluation of October 28–29, 1996 states that Harper received "strong approval and praise from office personnel." (Pl. Resp.Ex. 9). Although Harper's performance evaluation of September 5, 1996 indicates that he satisfactorily completed his duties at Georgia–Pacific, the Vice President of Logistics, Wayne Amy, testified that Harper's poor safety record and the low morale generated by Harper's presence provided grounds for choosing to replace Harper during Georgia–Pacific's downsizing efforts. (Pl.Resp. Ex. 7; Def. Mot.Summ.J., Amy Dep. at 81–85). Nonetheless, Amy admits that, but for the reorganization, Harper would not have been terminated. (Def.Mot.Summ.J., Amy Aff. at ¶ 17; Amy Dep. at 119).

In 1996, Amy initiated a work force reduction in an effort to reduce costs in the Logistics Division. (Amy Aff. ¶ 8). Although this first reduction effort did not affect Harper, due to continuing revenue losses, Amy was forced to reorganize the division in the Fall of 1996. (Id. at ¶ 9; Amy Dep. at 54–55). Harper was aware of Georgia–Pacific's cost reduction efforts as they affected the distribution division. (Harper Dep. at 74–75, 88–89). This reorganization targeted "individuals above the facility manager level," which resulted in the elimination of district outside sales manager positions in the Georgia–Pacific's Distribution Divisions throughout the nation. (Amy Aff. ¶¶ 9, 10). By November of 1996, in an effort to reduce costs even further, Amy terminated or placed into lower positions recently hired facility managers and replaced them with senior managers. (Id. at ¶¶ 11, 12; Amy Dep. at 54–57). The high-level managers were to be recruited into Georgia–Pacific Distribution Centers in the geographic locations in which they resided in order to avoid relocation costs. (Id. at ¶ 12; Amy Dep. at 60–61). Amy lists six facility managers throughout the nation who were terminated or demoted as a result of the reorganization, four Caucasians and two African–Americans and explains that "[i]n each situation the individual who was moving into the facility manager position was having his prior position eliminated in the reorganization." (Amy Aff. ¶ 13). Amy flatly denies that race played any role in the decision making process and that he looked only at the "relative experience and work performance" of the individuals affected by the reorganization. (Id. at ¶ 14; Amy Dep. at 60–61). In total about 1100 employees were laid off. (Harper Dep. at 90).

Georgia–Pacific asserts, through Amy's deposition testimony, that Harper was terminated as a result of the elimination of Gerald Bennett's position as District Outside Sales Manager. (Amy Dep. at 120, 121). Bennett, a Georgia–Pacific employee for thirty-two years, had been employed as a branch manager in Georgia–Pacific's Memphis location for fifteen years where he was well regarded and received two awards in recognition of his work as a

facility manager. (Amy Aff. ¶¶ 4–6). Bennett's position was to be terminated under this reorganization effort, thus making him available for the position held by Harper. (Amy Aff. ¶ 16). Because Bennett lived in Memphis and was allegedly more experienced than Harper, Georgia–Pacific chose him to assume Harper's job. (Def.Mot.Summ.J., Bruckert Dep. at 22).[1] While Harper concedes that Bennett had greater seniority, Harper attests by affidavit that Bennett had no experience in the Bulk Distribution Center and therefore did not possess the qualifications necessary to assume Harper's position. (Pl.Resp., Harper Aff. ¶ 3). Harper asserts that to compensate for Bennett's inexperience in handling day-to-day logistics involved with managing a bulk distribution center, Georgia–Pacific found it necessary to relocate Shaun Wade from Atlanta to Memphis. (Id. at ¶ 6).

In addition, Harper contends that "every manager in logistics who was black lost their position somehow." (Harper Dep. at 92–93). Harper points to five African–American employees who were demoted or terminated during the reorganization, two of whom were allegedly terminated in order to create positions for less-experienced Caucasian employees. (Harper Aff. ¶¶ 10, 11; Harper Dep. at 93). To support his claims of selective termination based on race Harper points to the case of Doug Devers. Devers, a Caucasian Bulk Distribution Center Manager in Birmingham, was hired at the same time as Harper. Unlike Harper, however, Devers was not terminated to create a vacancy for a senior branch manager residing in Birmingham, Bob Inabinet who had been terminated in the previous reduction effort. (Harper Aff. ¶ 6).

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

■ When confronted with a properly-supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In short, the non-moving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, the non-moving party must present "concrete evidence supporting its claims." *Cloverdale Equip. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989).

Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...."[2] The order and allocations of burdens of proof in a race discrimination case brought under 42 U.S.C. § 1981 are

---

1. William Bruckert held the position of Georgia–Pacific's regional general manager during December 1996. The Memphis Distribution Center was within his region of control.

2. The parties do not dispute that § 1981 applies in the present case.

appropriately guided by the evidentiary framework set forth by the Supreme Court in the landmark Title VII cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992); *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1270 n. 3 (6th Cir.1986) (explaining that liability under § 1981 and Title VII rest on the same proof).

In order to prevail on a § 1981 claim, plaintiff's claims must survive each of three stages of proof. The plaintiff first must establish a *prima facie* case of discrimination by a preponderance of the evidence. *Wilson v. Stroh Cos., Inc.,* 952 F.2d 942, 945 (6th Cir.1992) (citing *Burdine,* 450 U.S at 252–53, 101 S.Ct. 1089). If the plaintiff succeeds, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 342 (6th Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817). Once the defendant has come forward with a legitimate, nondiscriminatory reason for an adverse action, the plaintiff still may prevail if the plaintiff establishes by a preponderance of the evidence that the apparently nondiscriminatory rationale was only a pretext for discrimination on the basis of a prohibited consideration, in this case, race. *Mitchell* 964 F.2d at 584; *Wilson,* 952 F.2d at 945. In order to make this rebuttal showing, if the plaintiff fails to challenge the reasons offered by defendant, the plaintiff may not rely simply upon his *prima facie* evidence but must, instead, introduce additional evidence of race discrimination. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). If the plaintiff does factually challenge the defendant's rationale for the adverse employment action, however, the court may infer discrimination based on the plaintiff's *prima facie* case, without the plaintiff's introduction of additional evidence of discrimination. *Kline,* 128 F.3d

at 347 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see also Wixson v. Dowagiac·Nursing Home,* 87 F.3d 164, 170 (6th Cir.1996) (recognizing the "permissive pretext standard" of *Hicks* and stating "the factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the *prima facie* case, suffice to show intentional discrimination."). Regardless of the shifting burdens of production, the plaintiff at all times bears the "ultimate burden of persuasion." *Hicks,* 509 U.S. at 508, 113 S.Ct. 2742 (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089).

The factual showing that a plaintiff must make to establish a *prima facie* case will vary depending upon the type of employment practice or decision challenged. Adapting the *McDonnell Douglas/Burdine* framework to the facts of this case, a *prima facie* case under § 1981 is established when Harper proves that (1) he is a member of a protected class, in this case African–American; (2) he was subjected to an adverse action, the decision to terminate him from employment at Georgia–Pacific; (3) he was qualified for his position as a Distribution Center Manager; and (4) he was treated differently from similarly situated members of the unprotected class. *Mitchell,* 964 F.2d at 583. In satisfaction of the fourth element, Harper produces evidence that Doug Devers, a Caucasian distribution manager in Georgia–Pacific's Birmingham, Alabama office, who was hired at the same time as Harper, was not terminated during the reorganization even though a more senior employee, Bon Inabinet, a branch manager who had been terminated under the previous reduction campaign was residing in Birmingham and able to assume Devers' position. The positions and treatment of Devers and Harper are similar such that Harper alleges sufficiently different treatment from a comparable of the unprotected class. Georgia–Pacific does not dispute Harper's satisfaction of the first three elements of

his *prima facie* case. Although Georgia–Pacific challenges Harper's allegations with respect to the disparate treatment element of his case, Georgia–Pacific fails to introduce any evidence to support its position. Thus, Harper's evidence is sufficient to establish a *prima facie* case of racial discrimination.

■ In satisfaction of the second prong of the *McDonnell/Burdine* framework, Georgia–Pacific has articulated a legitimate, nondiscriminatory reason for Harper's termination, namely reduction of Georgia–Pacific's workforce. Downsizing or workforce reduction is one of the most common "legitimate reasons" for discharge. *Simon v. NuTone*, 1995 WL 456363, No. 94–3303, *3 (6th Cir. Aug. 1, 1995) (citing *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990)). Here, Harper along with about 1100 other employees were adversely affected by the work reduction campaign launched by Georgia–Pacific during 1995 and 1996. Additionally, Georgia–Pacific has clearly expressed that but for the downsizing campaign, Harper would not have been terminated. Thus, Georgia–Pacific's decision to achieve is cost-cutting goals by replacing junior employees with more senior employees was a legitimate nondiscriminatory reason for its action, even if the senior employees were not the most qualified persons for certain positions. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991) ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions."), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989) ("An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age.").

■ Harper, of course, may still prevail if he can present evidence that would support a finding that Georgia–Pacific's nondiscriminatory rationale was only a pretext for racial discrimination. Harper challenges Georgia–Pacific's claim that it determined which employees to terminate by seniority, experience, and geographic location alone. Instead, Harper asserts that Georgia–Pacific sought to reserve employment positions for less qualified Caucasian employees at the expense of African–American employees, based on race. To support this argument Harper first asserts that Bennett, his replacement, was less experienced in logistics, a required skill for management of a distribution center. Harper further contends that Georgia–Pacific's apparent transfer of another employee from Atlanta to Memphis to aid Bennett demonstrates that Georgia–Pacific recognized Bennett's lack of qualifications for the distribution manager position and that Georgia–Pacific was not in fact deeply concerned with avoiding relocation costs. These blanket assertions, however, are the extent of Harper's evidence to support his claim of pretext with respect to his termination.

Harper further contends that at least two African–American managers, company-wide, were demoted or terminated because of Georgia–Pacific's plan to reserve positions for less qualified Caucasian employees. In light of the fact that four Caucasian employees were similarly demoted or terminated in the reorganization effort, the court fails to see a pattern of discrimination that leads to a finding of pretext. Moreover, Harper has failed to establish that race was in any way a motivating factor for his termination.

Viewing the evidence in the light most favorable to Harper, the court holds that no reasonable jury could find that Georgia–Pacific's proffered reason for dismissing Harper was only a pretext for racial discrimination. Harper has offered no evidence at all that race played a part in any of Georgia–Pacific's decisions. Harper's conclusory assertions and his assumption that discrimination was a motivating factor in his dismissal are simply not sufficient to withstand a motion for summary judgment. *See McDonald*, 898 F.2d at 1162; *Young v. State Farm Mut. Auto., Ins. Co.,*

868 F.Supp., 937, 945 (W.D.Tenn.1994). *See also Moody v. Jefferson Parish Sch. Bd.*, 803 F.Supp. 1158 (E.D.La.1992) (finding plaintiff failed to create a genuine issue of material fact regarding intentional discrimination that would preclude summary judgment where she failed to set forth any specific facts regarding intentional discrimination), *aff'd*, 2 F.3d 604 (5th Cir. 1993). Therefore, the court grants Georgia–Pacific's motion for summary judgment as to Harper's § 1981 claim.

Harper also alleges that Georgia–Pacific's actions violated the THRA. THRA claims are subject to the same burden-shifting analysis as are § 1981 claims. *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn.App.1984) (*prima facie* case of age discrimination under the THRA is established by using criteria set out in *McDonnell Douglas*). In light of the court's decision regarding Harper's § 1981 claim, the court similarly finds that the THRA claim fails to survive Georgia–Pacific's motion for summary judgment. Accordingly, the court grants Georgia–Pacific's motion for summary judgment as to Harper's THRA claim.

This order disposes of Harper's action in its entirety.

IT IS SO ORDERED.